[Cite as *Kaplan v. Hammond*, 2024-Ohio-2492.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Gabriela Kaplan

    Appellant

v.

Ricky Hammond, et al.

    Defendants

[John A. Feick and Feick
Design Group, LLC – Appellees]

Court of Appeals No.  OT-23-003

Trial Court No.  18 CVH 180

**<u>DECISION AND JUDGMENT</u>**

Decided:  June 28, 2024

* * * * *

Bryan S. Choka, for appellant.

Justin D. Harris and Hannah R. Duschl, for appellees.

* * * * *

**ZMUDA, J.**

## I.  Introduction

**{¶ 1}** Appellant, Gabriela Kaplan, appeals the February 3, 2021, judgment of the

Ottawa County Court of Common Pleas granting summary judgment in favor of

appellees John A. Feick and Feick Design Group, LLC.[1] For the following reasons, we

---

[1] Because the claims against them, and our resolution of this appeal does not require
distinction between appellees, we refer to appellees collectively as "Feick" or "he" for
ease of reading.

reverse the trial court's judgment and remand this matter to the trial court for further proceedings.

## II. Facts and Procedural Background

{¶ 2} The factual background underlying this appeal, based on the parties' motions and affidavits, is largely undisputed. Kaplan has owned a residence in Put-in-Bay, Ottawa County, Ohio, since 1991. Put-in-Bay is located on an island and required all parties to take ferries to access the residence. During the time Kaplan has owned the property, she has had multiple instances of water intrusion into the residence, resulting in damages to the residence and her personal property. The facts relevant to the water intrusion giving rise to the present case began in 2012 when Kaplan entered into an agreement with North Coast Roofing, LLC, for the replacement of her roof. That work was performed in 2012.

{¶ 3} Three years later, Kaplan again discovered water intrusion into her residence. Believing that the issue related to a first-floor window, Kaplan contacted Hammond Construction, LLC ("Hammond"), to determine what work would be necessary to repair any damages and to replace the window. To determine the scope of work necessary, Hammond removed the exterior coverings from the residence and discovered that the water damage extended beyond the window it was inspecting. Hammond instead found that the window directly above the one it had been asked to inspect had also suffered from water intrusion and that the wood underneath the protective exterior coverings around both windows was damaged and needed to be

2.

replaced. Hammond recommended to Kaplan that all of the rotting wood underneath the coverings be replaced along with all windows, exterior doors, and the siding. Kaplan agreed and the parties entered into a contract for the suggested repairs on October 9, 2015.

{¶ 4} Having had multiple issues with water intrusion into the residence in the past, Kaplan sought an architect to perform four periodic inspections of Hammond's work as it progressed to ensure that no further water intrusion would occur. Kaplan ultimately entered into an agreement with Feick on November 13, 2015, to perform this oversight function. The agreement provided that Feick would provide Kaplan with sealed drawings for the door and window installations, conduct the requested inspections of Hammond's work, and to advise on any issues uncovered during the inspections. The scope of the inspections to be performed were outlined in the agreement and included the following:

1. Feick to meet [Hammond] the first day of demolition to review the installation procedures.

2. Feick to inspect the completed installation of the first 2 windows.

3. Feick to inspect upon completion of all windows and doors, prior to any siding being installed.

4. Feick to inspect after siding is completed.[2]

---

[2] We note that the record contains two different copies of the written agreement. The first, included as an exhibit to Kaplan's First Amended Complaint, contains these identical terms with additional terms hand-written into the agreement by Kaplan

3.

The agreement obligated Kaplan to reimburse Feick a flat fee of $2,700 for the four inspection trips in addition to paying a specified hourly rate for the work performed by any Feick representative in furtherance of the agreement.

{¶ 5} In addition to the terms outlining the scope of work and the fees due, the agreement also contained two terms related to the cessation of work/termination of the agreement and the amount of damages that could be recovered from Feick arising from any claims related to the agreement. The cessation/termination clause stated:

> This agreement may be terminated by either party upon not less than thirty days written notice should the other party fail substantially to perform in accordance with the terms of this agreement through no fault of the party initiating the termination. [Feick] reserves the right to cease all work production at such time that accounts remain unpaid thirty days after the invoice date. [Feick] shall be compensated for all services prior to termination or work stoppage for reasons stated above plus reimbursable expenses.

The limitation of liability clause stated:

regarding the scope of the inspections. The second copy, provided by Feick as an exhibit to his motion for summary judgment, does not include Kaplan's hand-written revisions. Despite this, Feick does not dispute that the parties entered into the written agreement. As described below, the basis for Kaplan's breach of contract claim is that Feick breached the agreement by failing to conduct the fourth inspection, regardless of its scope. As a result, we only review whether the trial court properly granted summary judgment in Feick's favor on Kaplan's breach of contract claim as to whether the inspection occurred and we make no judgment as to the proper scope of that inspection.

4.

Neither [Feick], nor its officers, directors, partners, employees, agents or consultants will be jointly, severally, individually or otherwise liable to the client or anyone claiming by, through or under the client, in excess of the compensation paid pursuant to this agreement, by reason of any act or omission (including breach of contract or negligence) not amounting to a willful or intentional wrong.

Neither party disputes the language of those basic terms or that those terms were included in the parties' November 13, 2015 written agreement.

{¶ 6} Hammond began its work on the residence on November 17, 2015. It is undisputed that Feick performed the first two scheduled inspections on November 18, 2015, and November 20, 2015, respectively. The record also shows that Feick performed an inspection of the completed window and door installation on December 24, 2015. From that inspection, Feick developed a "punch list" of items that needed to be addressed prior to the installation of the siding. Kaplan paid Feick $3,217.50 for the first three inspections and his work performed during those inspections pursuant to the agreement.

{¶ 7} The parties agree that the fourth inspection was scheduled to occur on April 25, 2016. The parties also agree that the inspection did not occur. Kaplan contends that the inspection was scheduled to occur in the afternoon. This, she argues, was to accommodate Hammond completing installation of the siding and addressing the punch list items from the December 24, 2015 inspection before Feick conducted his fourth inspection. Feick, on the other hand, argues that the work was to be completed by the

5.

time he arrived that morning and that the inspection would take place immediately upon his arrival. Feick arrived in the morning to conduct the inspection. He claims that because the work was not completed, he was unable to complete the inspection at that time. He ultimately spent his time on a personal job on the island while waiting for the work to be completed before returning home 3-4 hours later. He alleged that Hammond's work remained incomplete at that time.

{¶ 8} On April 29, 2016, Feick forwarded an invoice to Kaplan demanding payment of $675 for the "Site Visit April 25, 2016." Kaplan declined to pay the invoice and requested that Feick and Hammond arrange a time to meet at the residence to complete the fourth inspection. On May 2, 2016, Feick sent an email to Kaplan stating that the April 25, 2016 visit had been scheduled over a month in advance. He stated that the schedule for the day was for Hammond to take the first ferry to the island to complete the work and that he was to arrive on the next ferry to conduct the inspection. After arriving on the island and finding that the work was not completed, Feick contacted Hammond who advised that he was not expecting Feick until 3:00 that afternoon. Feick's email then stated that he was not at fault for the scheduling issue and that he had fulfilled his obligation to be present for the fourth inspection. He further stated that since he was not at fault for the lack of an inspection that he expected the invoice to be paid before he would provide any further work.

{¶ 9} In an undated email response, Kaplan stated that Feick was "supposed to arrive at the end of the day [on April 25, 2016, stay] about 2-3 hours [to] check it all, and

6.

if any problems, then stay to see they are corrected." Kaplan objected to being invoiced for Mr. Feick's time spent on site on April 25, 2016, when he had not conducted the inspection. Lastly, she accused Mr. Feick of acting in bad faith and threatened to report him to the "engineering/architect grievance committee." The parties continued exchanging contentious email correspondence related to the dispute, each continuing to assert their position as to the plan for Feick to complete the April 25, 2016 inspection.

{¶ 10} Ultimately, on October 11, 2016, Feick sent Kaplan a letter stating:

Per the terms and Conditions in our letter of engagement this is your

official written notice that:

1. Due to non-payment of our invoice, and,

2. Your continued demanding and threatening manner in your emails,

   We are ceasing all work on your project.

Feick has not performed any additional services at the residence since that time.

{¶ 11} On August 10, 2017, Kaplan filed a complaint in the Lorain County Court of Common Pleas. In her complaint, Kaplan alleged breach of contract claims and violations of Ohio's Consumer Sales Practices Act ("CSPA") against both Hammond and Feick. Kaplan also alleged a negligent construction claim against Hammond and a professional negligence claim against Feick. Kaplan also sought a declaratory judgment pursuant to R.C. 2711.01 finding that Feick's limitation of liability term was unconscionable and in violation of the CSPA.

7.

{¶ 12} Feick filed his answer to the complaint on September 13, 2017. Feick then filed a motion to transfer the Lorain County case to the Ottawa County Court of Common Pleas on March 5, 2018, arguing that Kaplan had filed the identical claims in that court. The Lorain County Court of Common Pleas granted Feick's motion to transfer venue on April 12, 2018. The physical transfer of the file was completed upon acceptance by the Ottawa County Clerk of Courts on May 2, 2018. The case was assigned Ottawa County Court of Common Pleas Case No. 2018-CVH-180.

{¶ 13} At a May 31, 2018 status conference in Kaplan's previously-filed Ottawa County Court of Common Pleas Case No. 2017-CVH-368, the parties agreed that Kaplan's cases—the previously transferred Lorain County case and the existing Ottawa County case—should be consolidated. The trial court ordered case numbers 2017-CVH-368 and 2018-CVH-180 to be consolidated in an order later that same day. From that date, each of the parties' filings in case number 2018-CVH-180, the case presently on appeal, included both case numbers in their captions.

{¶ 14} At the time of consolidation, Kaplan had pending claims against Hammond and Feick only. On November 5, 2018, the trial court granted Kaplan leave to file an amended complaint adding North Coast Roofing as a party following an oral motion made at a status conference earlier that day. Kaplan filed her amended complaint on December 6, 2018. Feick and North Coast timely answered the amended complaint. Hammond did not respond.

8.

{¶ 15} Following discovery, Feick filed his motion for summary judgment on June 1, 2020. Feick argued that he was entitled to summary judgment on each of Kaplan's claims. Specifically, Feick argued that he had abided by all terms of the contract before terminating his obligations pursuant to the termination clause, that Kaplan failed to introduce any required expert testimony to prove her professional negligence claim, and that the agreement's limitation of liability clause was not unconscionable as a matter of law. Kaplan filed her opposition on July 22, 2020. She argued that questions of fact remained as to whether Feick was at fault for failing to conduct the fourth inspection and that the limitation of liability clause was both substantive and procedurally unconscionable in light of its positioning within the agreement and due to the excessively disproportionate nature of the damage cap to the actual damages she incurred. As to her professional negligence claim, Kaplan produced an expert witness report that generally concluded that had Kaplan performed the fourth inspection, he would have identified the issues related to Hammond's improper installation of the siding. In his reply, Feick disputed that a question of fact existed as to whether he breached the agreement by not completing the fourth inspection, argued that Kaplan's expert was not qualified to reach any conclusions about his architectural work, and that the limitation on liability clause was present in the agreement at all times and therefore was not procedurally unconscionable.

9.

{¶ 16} The trial court granted Feick's motion for summary judgment on February 3, 2021.[3] The court found that there were no genuine issues of material fact that Feick was not at fault for failing to conduct the fourth inspection. For that reason, the trial court held that Feick did not breach the contract. Additionally, the trial court held that Kaplan had not "presented any expert testimony to establish professional negligence" and granted Feick summary judgment on that claim. Finally, the trial court found that Kaplan's declaratory judgment claim on unconscionability of the liability limit was moot since it had determined Feick did not breach the contract. Because Kaplan had claims pending against both Hammond and North Coast Roofing at the time of the trial court's judgment, that judgment was not a final appealable order. *See Miller v. First National Fid. & Trust Bldg., Ltd.,* 2006-Ohio-187 (6th Dist.) (holding that judgments resolving less than all claims of the parties, and that the trial court does not find that there is no just reason for delay in filing an appeal, are not final appealable orders pursuant to Civ.R. 54(B)).

{¶ 17} On April 30, 2021, Kaplan filed a motion for default judgment against Hammond. The trial court granted her motion on August 23, 2021, with a damages hearing to be held at a later date. Then, on March 3, 2022, Kaplan voluntarily dismissed her claims against North Coast, leaving only the amount of damages against Hammond

---

[3] North Coast and Kaplan engaged in dispositive motion practice contemporaneous with Feick's motion. In this same order, the trial court denied North Coast's motion for summary judgment. As that judgment is not before this court, we omit detailed discussion of those issues.

10.

on the default judgment to be determined. The trial court awarded Kaplan damages on her default judgment against Hammond on February 10, 2023. With the award of damages, all claims in this action had been resolved and the matter was closed. That judgment constituted a final appealable order as it resolved all claims of all parties to the action. *See Id.*

### III. Assignments of Error

{¶ 18} Kaplan timely appealed the trial court's judgment and asserts the following errors for our review:

1. The trial court committed reversible error when it misapplied the law and resolved factual questions against the non-moving party in granting summary judgment on Kaplan's breach of contract claim.

2. The trial court committed reversible error when it misapplied the law and resolved factual questions against the non-moving party in granting summary judgment to Feick on Kaplan's professional negligence claim.

3. The trial court committed reversible error when it misapplied the law and resolved factual questions against the non-moving party in granting summary judgment to Feick on Kaplan's claim of violation of Ohio's Consumer Sales Practices Act.

### IV. Law and Analysis

{¶ 19} Each of Kaplan's assigned errors relate to the trial court's granting of summary judgment in favor of Feick. We review the grant or denial of a motion for

11.

summary judgment de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 20} On a motion for summary judgment, the moving party has the burden of demonstrating that no genuine issue of material fact exists. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). In doing so, the moving party must point to some evidence in the record in the form of "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action[.]" Civ.R. 56(C); *Dresher* at 292–293. The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact does exist. *Dresher* at 293. The failure to satisfy this reciprocal burden warrants judgment against the nonmoving party. *Id.*

{¶ 21} Initially, we note that both parties' appellate briefs extensively cite the depositions of Gabriela Kaplan and her expert witness, Mike Coulter, taken on August 25, 2020, and August 28, 2020, respectively. Each of these depositions were taken more than three weeks after dispositive motion practice was completed. The deposition transcripts were not filed with the court until October 5, 2020, by North Coast in support

12.

of its own motion for summary judgment. While the depositions transcripts were filed before the trial court's February 3, 2021 judgment granting summary judgment to Feick, neither Kaplan nor Feick sought leave to supplement their dispositive motion briefs to identify how Kaplan or Coulter's deposition testimony supported their arguments for or against summary judgment. The trial court's judgment made no direct or implicit reference to the deposition testimony in resolving Feick's motion for summary judgment. Before addressing the merits of the parties' arguments, we must clarify whether we are able to consider the deposition testimony in our *de novo* review of the trial court's judgment.

{¶ 22} It is undisputed that Civ.R. 56 requires the parties to "[identify] those portions of the record before the trial court" that support their position. *Dresher* at 292. Indeed, the burden on the parties is phrased as an active obligation, in that they must identify evidence "demonstrating" that there are no genuine issues of material fact. *Id.* Here, neither party's dispositive motion filings identified Kaplan and Coulter's deposition testimony as part of the record before the trial court on which it could determine whether summary judgment was appropriate. Instead, each party relied solely on the affidavit testimony included with their respective memoranda in support of their positions. As a result, we find that Kaplan and Coulter's deposition testimony was not identified for the trial court's consideration in resolving Feick's motion for summary judgment. Our consideration of materials on appeal that the parties did not actively identify as supporting their arguments to the trial court, then, would circumvent their

13.

burden to identify those materials for the trial court's consideration. Therefore, we find that we cannot consider Kaplan and Coulter's deposition testimony in our de novo review of the trial court's judgment and that our review of that judgment is, instead, limited to the evidence that the parties identified in the record for the trial court's consideration— that is, the parties' affidavits and exhibits actually filed in support of their arguments.

{¶ 23} Having reviewed the appropriate portions of the record, we find that the trial court erred in granting summary judgment to Feick. We address Kaplan's assigned errors in turn.

### A. The trial court erred in concluding that there were no genuine issues of material fact related to Kaplan's breach of contract claim.

{¶ 24} In her first assignment of error, Kaplan argues that a genuine issue of material fact exists regarding whether Feick breached the contract, precluding the granting of summary judgment on that claim.[4] In her brief, Kaplan argues that Feick breached the agreement when he failed to conduct all of the inspections at the property as required by the agreement. Feick argues that because he was not at fault for failing to conduct the fourth inspection, he had the right to terminate the agreement and, therefore, was no longer obligated to perform his duties under the agreement. To determine whether a genuine issue of material fact exists as to Feick's alleged breached of the

---

[4] We note that our analysis regarding whether there are genuine issues of material fact as to whether Feick breached the contract by failing to complete the fourth inspection is limited to Kaplan's first assignment of error only. We independently analyze whether the trial court erred in determining that Feick did not owe Kaplan a professional duty of care for the inspections it did complete under Kaplan's second assignment of error below.

14.

contract by failing to conduct the required inspections, we review the facts surrounding each inspection separately.

{¶ 25} In her affidavit testimony, attached to her opposition to Feick's motion for summary judgment, Kaplan concedes that Feick conducted both of the first two required inspections on November 18, 2015, and November 20, 2015. However, while conceding that these inspections occurred, Kaplan alleges that the inspections were insufficient and resulted in additional damages. The alleged failure to perform these inspections in accordance within the appropriate professional standard is relevant to Kaplan's professional negligence claim, not her breach of contract claim. *See Semirile v. Jamieson,* 8th Dist. Cuyahoga No. 89578, 2008-Ohio-1093, ¶ 21 (holding that negligence claims against a home inspector are professional negligence claims that require expert evidence as to whether the work performed fell below the applicable standard of care). Put simply, the allegedly deficient nature of these first two inspections does not support Kaplan's claim that Feick breached the contract by failing to perform these inspections when she concedes that those inspections were indeed performed. Therefore, there is no genuine issue of material fact as to whether Feick performed the first two inspections in accordance with the contract.

{¶ 26} We reach the same conclusion as to Feick's performance of the third scheduled inspection that was to be conducted after the window and door installation but prior to the installation of the siding. In her affidavit, Kaplan stated that "Feick did not complete the [third and fourth] inspections required by his proposal, although he did

15.

briefly come to the residence on December 24, 2015[.]" This assertion, however, is belied by her testimony later in the same paragraph when Kaplan stated that "a punch list was created by Mr. Feick in December 2015[.]" Kaplan fails to explain how Feick created a punch list of items to be corrected without first conducting an inspection. While she argues that neither she nor Hammond were present at the time of the inspection, we find nothing in the parties' agreement that would require their presence at the time of the inspection. As a result, Kaplan has not identified a genuine issue of material fact regarding whether Feick performed the third inspection. Having established this fact, we view this evidence in a light most favorable to Kaplan, including her acknowledgement of Feick's presence on December 24, 2015, and the generation of a punch list resulting from his presence there, to determine whether Feick was entitled to summary judgment as a matter of law. *Harless* at 66. We find that reasonable minds could only conclude that the third required inspection took place on December 24, 2015, in light of that evidence. As a result, Kaplan has not identified a basis on which to conclude that appellant breached the agreement related to the third inspection.

{¶ 27} The agreement states that the fourth inspection was to take place "after siding is completed." There is no provision in the agreement that requires all prior "punch list" items to be completed before the fourth inspection occurred. Both parties agree that this fourth inspection was supposed to take place on April 25, 2016. Both parties also agree that the inspection did not occur on that day. In her affidavit, Kaplan testified that Feick "was not present" and that he "failed to return once Hammond got to

16.

the residence later in the day, even though he said he would." She argued that because Feick "failed to conduct all of the inspections at the property as required by the contract" that he had breached the contract.

{¶ 28} In his motion for summary judgment, Feick attached email correspondence he sent to Kaplan on May 2, 2016. In that email, he stated:

[t]he [April 25, 2016] visit was scheduled well over a month in advance. [Hammond] and his team [were] to take the 2nd boat in the morning. I would follow on the third boat. You [Kaplan] were copied on all emails. I didn't change anything nor did anyone call me and advise of any changes in the schedule. [Hammond] failed to keep the schedule. Not my fault.

Feick also attached his subsequent June 7, 2016 email correspondence to Kaplan in which he restated this same understanding of the schedule for the April 25, 2016 inspection. Feick argues that these emails show that the schedule had been worked out in advance and that he was not at fault for the fourth inspection not occurring. Notably, Feick did not include any of the prior emails that purportedly set the schedule for April 25, 2016, in his motion for summary judgment. In his affidavit, Feick also stated that Hammond did not arrive that day to "complete the work" but he does not specify what work was incomplete.

{¶ 29} Based on his correspondence, Feick argued that the failure to conduct this fourth inspection did not constitute a breach of contract because (1) the inability to complete the inspection was not Feick's fault, (2) Kaplan failed to fulfill her obligation

17.

under the contract when she refused to pay the invoice for time spent at her residence when the inspection was supposed to occur, (3) that in light of the failed payment, Feick terminated the agreement and, therefore, owed no further contractual obligations to Kaplan, and (4) since he was not obligated to perform the fourth inspection after terminating the contract, any damages resulting from the lack of that inspection could not be attributed to Feick.

{¶ 30} Each of these arguments is premised on Feick's claim that he was not at fault for the inspection not occurring on April 25, 2016. Because he was not at fault, he argues, he had the right to be compensated for the trip to Kaplan's residence and her failure to pay warranted his termination of the agreement, excusing him from completing the inspection that may have uncovered the incorrect installation of the siding. Each of Feick's arguments, as a result, can only succeed if the trial court properly determined that there was no genuine issue of material fact as to whether Feick was at fault for the inspection not being completed on April 25, 2016. Having reviewed the record, we find that the trial court erred in finding that there was no genuine issue of material fact as to whether Feick was at fault for the failed inspection.

{¶ 31} In our de novo review, we apply the same standard that the trial court applied in granting summary judgment. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). The first step in that analysis requires us to determine whether any genuine issue as to any material fact exists. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64,

18.

66 (1978). "A 'material fact' is one which would affect the outcome of the suit under the applicable substantive law." *Meyer v. United Airlines, Inc.,* 2018-Ohio-259, ¶ 36 (6th Dist.).

{¶ 32} Here, the agreement expressly states that if either of the parties sought to exercise the termination clause of the agreement, it could only do so when "the other party fail[ed] substantially to perform in accordance with the terms of the agreement *through no fault of the party initiating the termination.*" (Emphasis added). If Feick was at fault for the failure to complete the fourth inspection, he cannot credibly argue that he was not at fault for Kaplan's refusal to "substantially comply" with the agreement by not paying the invoice for his time that day. In that instance, Feick could not have terminated the agreement, he would have been obligated to complete the fourth inspection, and could be held liable for breaching his obligation to conduct that fourth inspection. Clearly, then, whether Feick was at fault for failing to complete the fourth inspection would affect the outcome of the suit under the applicable law and constitutes a material fact in this litigation. *Id.*

{¶ 33} We note the dissenting opinion's conclusion that the scheduling of the fourth inspection cannot constitute a material fact because that inspection purportedly could not have occurred on the appointed day, even if the parties had agreed on the schedule, because the work was never completed. We respectfully disagree.

{¶ 34} The agreement obligated Feick to perform the fourth inspection "after siding is completed." The contract contains no other conditions necessary for the

19.

inspection to occur. The dissent's analysis impermissibly imposes on the parties a condition—*all* work completed—that is neither expressly nor impliedly intended in the agreement. For example, the contract makes no reference to the completion of prior punch list items to be completed prior to the fourth inspection. Moreover, the only reference in the record to the work not being completed in time to permit the inspection to occur relates to the time period *prior* to Feick leaving the island at 12:30. There is nothing in the record to show that "the work" to be completed had, in fact, not been completed by the time Kaplan believed the inspection was to occur. To the contrary, Kaplan's affidavit states that later that summer, "parts of the siding fell to the ground * * * and other parts of the siding buckled."

{¶ 35} There is nothing in the record which established that this condition was or was not completed prior to Feick's appearance on April 25, 2016. Accordingly, viewing the affidavit testimony in a light most favorable to Kaplan, the nonmoving party, we can only conclude that a genuine issue of material fact remains as to whether the siding had been installed by that time, triggering Feick's obligation to conduct the fourth inspection. Whether Feick's performance of the fourth inspection would have resulted in identification of the punch list items from the third inspection as being incomplete is not relevant to whether Feick was obligated to conduct the fourth inspection. Further, whether the results of that fourth inspection, including identification of those incomplete items, may have necessitated an agreement between the parties for additional inspections is not part of the agreement before us. The issue of fact as to whether the siding had been

20.

installed, obligating Feick to perform the fourth inspection, is the only "work" that, if not completed, would have precluded him from conducting that inspection. Since the contract did not require the punch list items from the prior inspection to be completed, we believe that the dissenting opinion incorrectly relies on that incomplete work to find that Feick could not have performed the inspection.

{¶ 36} Additionally, the dissent's conclusion that "there is no evidence in the record we are considering here that establishes the necessary work was completed at any time that day" to find that the inspection could not have occurred reverses the parties' burdens on summary judgment proceedings. If Feick intended to show that even if he had appeared at Kaplan's residence in the afternoon that the inspection could not be completed, it would have been his obligation as the moving party to identify the portions of the record supporting that fact. Civ.R. 56, *Dresher* at 292. He only specified that the work had not been completed before he arrived at the residence and remained incomplete by the time he left the island at 12:30 p.m. He makes no reference to the work being incomplete for the remainder of the day. His June 7, 2016 email, attached to his affidavit, acknowledges that Hammond arrived on the island at 12:00, a fact that Kaplan argues was to complete the repairs in time for the afternoon inspection. Neither party identifies a portion of the record identifying what work Hammond performed that afternoon.

{¶ 37} The lack of evidence regarding what the specific scope of work Hammond, in fact, had or had not completed, and whether the work was completed in time to perform the inspection later in the day, should weigh against Feick as the failure to satisfy

21.

his initial burden under Civ.R. 56, not against Kaplan. By weighing this lack of evidence against Kaplan, the dissent has tasked her with an obligation that does not exist under Civ.R. 56—that is, satisfying her reciprocal burden to show that Feick was not entitled to summary judgment when Feick has not met his initial burden to show that he *was* entitled to summary judgment.

{¶ 38} We find that Feick's failure to present any evidence regarding whether the triggering condition that the siding had or had not been installed, or whether he could or could not have completed the fourth inspection at all that day, belies any argument that he could not have completed the inspection under Kaplan's schedule. Instead, weighing the lack of evidence in Kaplan's favor, we cannot say that the unspecified work Feick alleges prevented him from completing the inspection was not complete at the time Kaplan believed the inspection was to occur on April 25, 2016. The fact that there is no evidence to show that the inspection could not have occurred at the time Kaplan had arranged, after Hammond completed its work that afternoon, renders the parties' dispute over when the inspection was to occur more prominent as the deciding factor in this case and, as a result, a material fact directly affecting the outcome of this litigation.

{¶ 39} Having determined that whether Kaplan was at fault constitutes a material fact, we must next determine whether there are any genuine issues as to that material fact. *Harless* at 66. The record before this court, related to that material fact, includes Kaplan's affidavit testimony that Feick was to conduct the inspection on April 25, 2016, after Hammond arrived at the property and Feick's affidavit testimony that Hammond's

22.

failure to complete the work before his arrival precluded him from conducting the inspection. It is Feick's initial burden to show that no genuine issue of material fact exists. *Dresher*, 75 Ohio St.3d at 292 (1996). Feick attempted to satisfy this burden through his own affidavit testimony and correspondence sent *after* the failed inspection stating that the schedule for April 25, 2016, was set long before that date. He did not introduce into the record, however, any of the pre-April 25, 2016 emails that he claims established the schedule. Additionally, Feick's exhibit included Kaplan's response to his email in which she stated "you [Feick] were supposed to come *at the end of the day*, about 2-3 hours so you check it all, and if any problems, then stay to see they are corrected." (Emphasis added). She also stated "[y]ou came early because you had another assignment." Kaplan's email comports with her affidavit testimony that Feick was supposed to return later in the day after Hammond had completed his work.

{¶ 40} Considering the conflict between Kaplan's affidavit testimony and Feick's affidavit testimony, including the lack of corroborating emails from Feick regarding the allegedly established schedule and Kaplan's correspondence in which she disputes Feick's claim that he abided by that schedule, we find that Feick failed in his initial burden to show that no genuine issue of material fact existed as to who was at fault for the fourth inspection not occurring. Therefore, we find that there is a genuine issue of material fact as to who was at fault for the fourth inspection not occurring. Since there is a genuine issue on that fact, the trial court incorrectly concluded that Feick did not breach the agreement because he was permitted to exercise the termination clause to excuse his

23.

performance of the fourth inspection. As a result, the trial court erred in awarding Feick summary judgment on Kaplan's breach of contract claim and Kaplan's first assignment of error is found well-taken.

**B. The trial court erred in concluding that Feick owed appellant no professional duty because the fourth inspection did not occur.**

{¶ 41} In her second assignment of error, Kaplan argues that the trial court erred in granting Feick summary judgment on her professional negligence claim. The trial court granted summary judgment to Feick holding that because Feick had not performed the fourth inspection that no professional duty to Kaplan arose, and that because Kaplan had not presented any expert testimony she could not establish her professional negligence claim.

{¶ 42} As to the trial court's first conclusion, we find that the trial court improperly limited Kaplan's professional negligence claim to damages she alleges related to the fourth inspection only. In her amended complaint, Kaplan alleged that Feick's work fell below the reasonable professional standards applicable to an architect "[a]t all times relevant and pertinent hereto." She then provided an overview of the work Feick had agreed to complete and alleged that it failed to meet the professional duty owed to her as an architect. Put simply, Kaplan alleged that Feick breached his professional duty to her over the course of the work performed pursuant to their agreement. The trial court's conclusion that Feick did not owe a duty to Kaplan because the fourth inspection did not occur ignores Kaplan's allegation that Feick breached his professional duty throughout the project. Kaplan's amended complaint plainly alleges a breach of duty

24.

related to the first three inspections in addition to the fourth inspection that did not occur. The trial court's conclusion that Kaplan's breach of professional duty claim is premised only on the fourth inspection never occurring is simply incorrect.

{¶ 43} Our review of the record also shows that the trial court's second conclusion—that Kaplan failed to introduce expert testimony necessary to support her professional negligence claim—is incorrect. In Feick's motion for summary judgment, he correctly stated that "where the alleged negligence involves the exercise of professional skill and judgment, expert testimony is required to establish the prevailing standard of care, a breach of that care, and proximate cause." *Chilton-Clark v. Fishel,* 10th Dist. Hamilton No. 16AP-76, 2016-Ohio-7135, ¶ 12. Feick argued that because Kaplan had failed to identify an expert witness by the time he filed his motion for summary judgment that Kaplan could not prevail on her claim.

{¶ 44} In her opposition, Kaplan provided an expert witness report from Mikel Coulter of CTL Engineering.[5] Mr. Coulter's report stated that his company had performed a "forensic investigation" at Kaplan's residence on June 5, 2020. Mr. Coulter's report identified four issues that contributed to the water intrusion at Kaplan's residence. Relevant to Feick, these issues include improper installation of window trim "that should have been caught at the time of construction," improper installation of the

---

[5] In his brief, Feick incorrectly states that Kaplan did not file the expert report with the trial court. However, the record clearly shows that the report was filed separately from Kaplan's opposition on July 23, 2020, and incorporated by reference into Kaplan's opposition to Feick's summary judgment motion.

25.

metal window trim, and improper installation of the siding. Mr. Coulter's report concludes, in part, that "it is the opinion of CTL that all of the damage that was observed by our investigation could have been avoided if proper construction observation had occurred[.]" Kaplan argued that this report showed "various aspects of the construction work which were deficient and/or defective and which Defendant Feick was responsible for inspecting and informing the owner regarding such issues." As a result, she argued that there were genuine issues of material fact as to whether Feick met the professional duty owed to her in the course of his inspections.

{¶ 45} In reply, Feick argued, without support, that Mr. Coulter was not qualified to opine as to the professional standards applicable to an architect because he was not himself an architect. He also argued that Mr. Coulter's report did not establish a causal connection between Feick's failure to properly inspect Hammond's work and the damages incurred to a reasonable degree of certainty. The trial court agreed with Feick and held that "Kaplan has not presented any expert testimony to establish professional negligence."

{¶ 46} On appeal, Kaplan argues that her expert witness report was sufficient to support her claim of professional negligence and shows that there is a genuine issue of material fact that precluded the award of summary judgment. We agree.

{¶ 47} First, we find that Feick's argument that Mr. Coulter was not qualified to render an opinion that would support Kaplan's professional negligence claim is unsupported. We note that Feick did not seek to challenge Mr. Coulter's qualifications

26.

pursuant to Evid.R. 702 at the time he was identified as an expert in Kaplan's opposition to Feick's motion for summary judgment. Notably, Feick abandons this argument on appeal. It was Feick's burden under Civ.R. 56 to show that Kaplan did not introduce sufficient evidence to support her professional negligence claim. *Dresher*, 75 Ohio St.3d at 292 (1996). Feick did not identify any evidence in the record to dispute Mr. Coulter's qualifications to give his expert opinion. As a result, we have no basis to conclude that Mr. Coulter was not qualified to provide his opinion.

{¶ 48} Second, we find that Mr. Coulter's report provided sufficient detail to establish his conclusion that Feick's work was allegedly deficient and was the proximate cause of the damages Kaplan claimed, despite not expressly stating his conclusion to a reasonable degree of certainty. It is well-established that expert testimony does not require "magic words" but must, when considered in its entirety, be equivalent to an expression of probability. *Brondes Ford, Inc. v. Habitec Sec.,* 2015-Ohio-2441, ¶ 136 (6th Dist.). Viewing the report in its entirety, we find that Mr. Coulter concluded that Kaplan incurred damages related to the installation of the windows and siding. Further, Mr. Coulter concluded that these issues would have been discovered had Feick performed a "proper" inspection and the failure to do so "contributed" to Kaplan's claimed damages. Certainly, Mr. Coulter could have offered more detailed conclusions.[6] That notwithstanding, we find that his report as written is equivalent to an expression of

---

[6] Mr. Coulter provided further detail during his deposition testimony. As described herein, neither party identified his testimony in support of their arguments so we do not address that testimony here.

27.

probability that Feick's inspections fell below the professional standard of care owed to Kaplan and that the deficient inspections proximately caused Kaplan's claimed damages. Therefore, we find that the trial court erred in concluding that Kaplan did not introduce expert testimony sufficient to support her professional negligence claim and that Feick was entitled to summary judgment on those grounds.

{¶ 49} In sum, Feick's motion for summary judgment failed to show that Kaplan's expert was not qualified to provide an opinion on his liability for Kaplan's professional negligence claim or that Mr. Coulter's conclusions were not sufficient to support that claim. For these reasons, we find that the trial court erred in granting Feick summary judgment on those bases and that Kaplan's second assignment of error is well-taken.

**C. The trial court erred in dismissing appellant's CSPA claim as moot.**

{¶ 50} In her third assignment of error, Kaplan argues that the trial court erred in granting summary judgment to Feick on her claim that Feick's limitation of liability clause was unconscionable pursuant to Ohio's CSPA. We note that while the trial court's judgment referenced a lack of evidence supporting that claim, it ultimately determined that because no breach of contract had occurred that Kaplan's claim was moot. Since we find that Feick was not entitled to summary judgment finding that it did not breach its contract with Kaplan and reverse the trial court's granting of summary judgment on that claim, the trial court's conclusion that Kaplan's CSPA claim was moot was likewise incorrect. For this reason, we find that the trial court's granting of summary judgment to

28.

Feick on Kaplan's CSPA claim was incorrect and we find Kaplan's third assignment of error well-taken.

## V. Conclusion

{¶ 51} We find each of Kaplan's assignments of error well-taken. The trial court erred in granting summary judgment to Feick on Kaplan's breach of contract, professional negligence, and CSPA claims. Therefore, we reverse the February 3, 2021 judgment of the Ottawa County Court of Common Pleas and remand this matter for further proceedings.

{¶ 52} Feick is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed<br>
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Gene A. Zmuda, J. _____

_____
JUDGE

Charles E. Sulek, P.J. _____
CONCUR

_____
JUDGE


Myron C. Duhart, J. _____
CONCURS, IN PART,                                    _____
DISSENTS, IN PART,                                                    JUDGE
AND WRITES SEPARATELY.

**DUHART, J.**

{¶ 53} While I agree with the majority's analysis and judgment as to the second and third assignments of error, I respectfully dissent from the majority's resolution of the

first assignment of error as I do not find the evidence before us creates a genuine issue of material fact.

{¶ 54} I agree that Feick is only entitled to summary judgment "if the trial court properly determined that there was no genuine issue of material fact as to whether Feick was at fault for the inspection not being completed on April 25, 2016." And while I also agree that there is a factual dispute as to when that inspection was to take place, I do not find this factual dispute to be material.

{¶ 55} I disagree with the majority's belief that I am placing an inappropriate burden on Kaplan. Feick, as the moving party, had the initial burden of demonstrating that no genuine issue of material fact existed. I believe Feick met this initial burden with his affidavit which stated:

6. On the day of inspection on April 25, 2016, I … presented to Ms. Kaplan's vacation residence … to inspect the work of Hammond Construction, LLC to find that the work was not complete.

7. I … waited 3 – 4 hours for Hammond Construction, Inc.

8. Hammond Construction, Inc. did not present to Ms. Kaplan's vacation residence … to complete the work; thus I never had an opportunity to inspect the final work of Hammond Construction, LLC.

. . .

30.

10. While Feick Design Group, Inc. was hired to inspect the work of Hammond Construction, LLC, without the completion of that work, Feick Design Group, Inc. could not conduct the inspection.

{¶ 56} With this testimony, Feick established that he was present for the inspection on the scheduled day but was unable to complete the inspection because the work he was to inspect "was not complete." To me, this is sufficient to meet his initial burden of establishing that he was not at fault for the lack of an inspection on that date, and thus, the contract entitled him to bill for his time.

{¶ 57} Once Feick met his initial burden, the burden then shifted to Kaplan to provide evidence showing a genuine issue of material fact existed. "The failure to satisfy this reciprocal burden warrants judgment against the nonmoving party." I do not find that Kaplan has met her reciprocal burden, warranting judgment against her.

{¶ 58} Both parties agree that Feick was to come to the house on April 25, 2016, to complete an inspection, and that he did, in fact, arrive at the house to complete the inspection. They merely disagree as to what time of day Feick was to be there. Kaplan attempts to create a genuine issue of material fact by alleging that Feick was to arrive later in the day. I would find the time of day to be material only if, by the later time, the work was completed so that the inspection could take place. However, there is no evidence in the record we are considering here that establishes the necessary work was completed *at any time that day.*

31.

{¶ 59} The majority contends that the only work that needed to be accomplished was the installation of the siding, however this is not the argument raised by Kaplan. In her appellate brief, Kaplan states that "[a] genuine issue of fact exists [regarding whether Feick was unable to perform the fourth inspection because Hammond had failed to complete the work] as Kaplan testified that the work was substantially completed as the punch list of items was completed by Hammond during the April trip, but it was Feick who showed up at the wrong time and then failed to return to inspect the job once it was completed." I note that Kaplan's allegation that the contractor "substantially completed the punch list work" that day is not supported by the record before us, and is contrary to Kaplan's affidavit, where she averred that "while a punch list was created by Mr. Feick in December 2015, that punch list was never completed…"

{¶ 60} Moreover, regardless of whether the work that Feick was there to inspect was the siding, or the completion of the punch list, Feick presented evidence he was there on the agreed upon date and was unable to complete the inspection as the work was not completed. Kaplan countered that Feick arrived at the wrong time but has not presented any evidence that the time was material.

{¶ 61} As the parties agree Feick arrived to inspect the house on April 25, 2016, and as I do not find there to be any evidence that the time of day would have made any difference in what Feick could accomplish while he was at the house, I further would find that Feick was entitled, pursuant to the terms of the contract, to terminate the contract when Kaplan failed to pay the invoice for the April 25, 2016 visit.

32.

{¶ 62} For these reasons, I would affirm the trial court's decision with respect to the first assignment of error.

{¶ 63} Regarding the second assignment of error, I agree with the majority that Kaplan's professional negligence claim goes beyond claimed damages related to the fourth inspection and also alleges a breach of duty relating to the first three inspections. I further agree that Mr. Coulter's report provides evidence of Feick's negligence regarding these inspections. Therefore, I concur with the majority's decision to reverse the second assignment of error.

{¶ 64} Because I agree with the majority that we must reverse the trial court's decision regarding Kaplan's negligence claim, I also agree we must reverse Kaplan's CSPA claim. I find the CSPA claim is not moot since the limitation of liability clause includes claims of negligence as well as breach of contract.

{¶ 65} Therefore, I concur with the majority's decision as to the second and third assignments of error, but dissent with the majority's resolution of the first assignment of error.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

33.