


FILED

Jun 22 2026, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Hoagland Family Limited Partnership,

*Appellant-Defendant*

v.

Town of Clear Lake,

*Appellee-Plaintiff*

---

June 22, 2026

Court of Appeals Case No.
25A-PL-1361
25A-PL-3170

Appeal from the Steuben Circuit Court

The Honorable William R. Walz IV, Special Judge

Trial Court Cause No.
76C01-1006-PL-000425

---

**Opinion by Judge Felix**

Judges May and Mathias concur.

**Felix, Judge.**

## Statement of the Case

In this installment of the Hoagland Family Limited Partnership's ("Hoagland") fight over connecting to the Town of Clear Lake's (the "Town") public sewer system (the "Sewer"), Hoagland challenges five of the trial court's more recent orders: (1) the December 2024 order denying Hoagland's motion for leave to amend its answer; (2) the March 2025 order holding Hoagland liable for $512,623.52; (3) the April 2025 order holding Hoagland liable for $60,076.49 in attorneys' fees, (4) the October 2025 order holding Hoagland liable for $15,066.00 in appellate attorneys' fees, and (5) the October 2025 nunc pro tunc order clarifying that Hoagland is liable for $19,920.00 pursuant to a contempt finding. Specifically, Hoagland presents the following issues for our review:

1. Whether the trial court abused its discretion by denying Hoagland leave to amend its answer;
2. Whether the trial court erred by entering the $512,623.52 judgment in favor of the Town;
3. Whether the trial court abused its discretion by awarding the Town $60,076.49 in attorneys' fees;
4. Whether the trial court erred by awarding the Town appellate attorneys' fees; and
5. Whether the trial court erred by entering the nunc pro tunc order.

We affirm.

## Facts and Procedural History

### Background

[3] Hoagland's unwillingness to connect to the Sewer has generated a rather effluent stream of litigation, producing at least five prior decisions from this court and one decision from the Indiana Supreme Court:

> (1) *Town of Clear Lake v. Hoagland Fam. Ltd. P'ship*, 75 N.E.3d 1081 (Ind. Ct. App.) [hereinafter *Hoagland I*], *trans. denied*, 94 N.E.3d 298 (Ind. 2017);
>
> (2) *Hoagland Fam. Ltd. P'ship v. Town of Clear Lake*, 131 N.E.3d 731 (Ind. Ct. App. 2019) [hereinafter *Hoagland II*], *trans. denied*, 141 N.E.3d 26 (Ind. 2020);
>
> (3) *Hoagland Fam. Ltd. P'ship v. Town of Clear Lake*, No. 21A-PL-2566 (Ind. Ct. App.) [hereinafter *Hoagland III*];
>
> (4) *Hoagland Fam. Ltd. P'ship v. Town of Clear Lake*, 207 N.E.3d 1220, No. 22A-PL-631 (Ind. Ct. App. Mar. 23, 2023) (mem.) [hereinafter *Hoagland IV*], *trans. denied*, 217 N.E.3d 1243 (Ind. 2023);
>
> (5) *Hoagland Fam. Ltd. P'ship v. Town of Clear Lake*, 257 N.E.3d 830 (Ind. Ct. App.) [hereinafter *Hoagland V*], *trans. denied*, 265 N.E.3d 1005 (Ind. 2025); and
>
> (6) *Hoagland Fam. Ltd. P'ship v. Town of Clear Lake*, 253 N.E.3d 1109 (Ind. 2025) (per curiam) [hereinafter *Hoagland VI*].

In our latest effort to "plunge this dispute from the judicial pipeline," *Hoagland II*, 131 N.E.3d at 732, we add another decision to this list: (7) *Hoagland Fam.*

*Ltd. P'ship v. Town of Clear Lake*, -- N.E.3d --, No. 25A-PL-1361, No. 25A-PL-3170 (Ind. Ct. App. 2026) [hereinafter *Hoagland VII*].[1]

[4]     Hoagland has two general partners—Daniel and Karen Hoagland—and owns three parcels of real estate in the Town. *Hoagland V*, 257 N.E.3d at 835. In 2002, the Town enacted an ordinance (the "2002 Ordinance") that required Hoagland to connect to the Sewer, and once the Sewer was complete in 2005, Hoagland refused to connect. *Id.* In January 2010, the Town sent notice to Hoagland that it would initiate legal proceedings within 90 days if Hoagland did not connect to the Sewer. *Id.* True to its word, in Cause 76D01-1006-PL-425 (the "2010 Cause"), the Town sued Hoagland, alleging it had not connected to the Sewer and should be fined for not doing so. *Id.*

[5]     In 2016, the trial court granted summary judgment in favor of Hoagland, which this court reversed. *Hoagland I*, 75 N.E.3d at 1087. In 2017, while *Hoagland I* was pending, the Town enacted a new ordinance governing connection to the Sewer, and Hoagland refused to comply with the new requirements. *Hoagland II*, 131 N.E.3d at 735–36. The trial court ordered Hoagland to comply with the 2017 ordinance, *id.* at 736, and this court reversed that decision but reminded Hoagland that it still needed to connect to the Sewer pursuant to the 2002 Ordinance, *id.* at 739.

---

[1] This decision disposes of two separate appeals: Case 25A-PL-1361 ("Appeal 1361") and Case 25A-PL-3170 ("Appeal 3170"). To avoid confusion, we include "1361" and "3170" as appropriate in our citations to the Record and the parties' briefs.

In October 2021, upon the Town's motion, the trial court ordered Hoagland to connect to the Sewer by 5:00 p.m. on November 17, 2021 (the "Connection Order"). *Hoagland V*, 257 N.E.3d at 836–37. This court dismissed Hoagland's subsequent appeal. Order, *Hoagland III*, No. 21A-PL-2566 (Ind. Ct. App. Jan. 10, 2022) (dismissing appeal); Order, *Hoagland III*, No. 21A-PL-2566 (Ind. Ct. App. Feb. 28, 2022) (denying reh'g pet.). While *Hoagland III* was pending, Hoagland refused to comply with the Connection Order and was held in contempt (the "First Contempt Order"). *Hoagland IV*, 207 N.E.3d 1220, No. 22A-PL-631, slip op. at ¶¶ 10–11. Hoagland appealed the First Contempt Order and several other related orders, including the Connection Order. *Id.* at ¶ 12 n.1. This court limited Hoagland's appeal to only the First Contempt Order, *id.*, and affirmed the trial court's decision to hold Hoagland in contempt for willfully disobeying the Connection Order, *id.* at ¶ 22.

In October 2023, after *Hoagland IV* was decided, Hoagland admitted during a telephonic conference with the trial court that it still had not connected to the Sewer, so the Town requested Hoagland once again be held in contempt. *Hoagland V*, 257 N.E.3d at 838. At the ensuing contempt hearing, Daniel admitted that Hoagland's properties still were not connected to the Sewer and provided explanations for this. *Id.* at 839. In December 2023, the trial court found Hoagland in contempt for a second time (the "Second Contempt Order"). *Id.* at 839–40. Hoagland appealed, arguing in relevant part that the Connection Order was void. *Id.* at 835, 844. In April 2025, this court affirmed the Second Contempt Order and awarded the Town appellate attorneys' fees

because *Hoagland V* was not only the third time Hoagland challenged the Connection Order, but it was also "the most meritless and frivolous attempt to prolong this case." *Id.* at 846.

[8] While these proceedings were ongoing in the 2010 Cause, Hoagland initiated Cause 76D01-2305-PL-237 (the "2023 Cause"), in which it sued "the Town and several of its governing bodies, elected officials, employees, and contractors." *Hoagland VI*, 253 N.E.3d at 1110. Hoagland's claims in the 2023 Cause "derived from the facts and circumstances litigated in" the 2010 Cause. *Id.* The 2023 Cause was dismissed *with* prejudice pursuant to Indiana Trial Rule 12(B)(8). *Id.* Hoagland appealed the dismissal, arguing it should have been *without* prejudice. *Id.* In October 2024, this court affirmed the trial court's decision, *Hoagland Fam. Ltd. P'ship v. Town of Clear Lake*, 246 N.E.3d 284 (Ind. Ct. App. 2024), and Hoagland petitioned for transfer.[2] In March 2025, the Indiana Supreme Court granted transfer; vacated this court's opinion; and issued *Hoagland VI*, agreeing that the dismissal should be *without* prejudice and remanding. 253 N.E.3d at 1110–11.

---

[2] In recounting the procedural history leading to *Hoagland VI*, Hoagland states this court's decision can be found at "246 N.E.3d 1081." Appellant's Am. 1361 Br. at 4, 48; *see also* Appellant's 1361 Reply Br. at 4. That reporter information leads to *Kaplan v. Hammond*, 246 N.E.3d 1072 (Ohio Ct. App. 2024) (beginning on page 1072, ending on page 1089). The correct reporter information, as reflected above, is 246 N.E.3d 284.

**Proceedings Giving Rise to Appeals 1361 and 3170**

**Answer Amendment.** On November 27, 2024, while *Hoagland VI* was pending, Hoagland filed a motion in the 2010 Cause to amend its answer by adding a counterclaim. On December 2, the trial court denied that motion, and it struck the motion and attached counterclaim from the record. On April 15, 2025, based on *Hoagland VI*, Hoagland filed a motion to correct error regarding the denial of its amendment motion. On May 2, the trial court denied this motion.

**$512,623.52 Judgment.** "At various times in 2024[, Hoagland] ultimately connected its three properties to the Town's sewer system . . . ." Appellant's 1361 App. Vol. II at 107. On September 12, 2024, the Town requested a hearing to determine Hoagland's "financial obligations to the Town related to Hoagland's connection to" the Sewer. Appellant's 1361 App. Vol. V at 227. In particular, the Town alleged Hoagland was liable for (1) the Town's attorneys' fees pursuant to Clear Lake Code section 51.51 and Indiana Code section 36-9-23-30(d); (2) the Town's expenses related to the design and construction of building the sewer lines serving Hoagland's properties pursuant to Clear Lake Code section 51.52(A)(3); and (3) the delinquencies Hoagland owed pursuant to Clear Lake Code section 51.51(B)(3).

On December 17, the trial court held a hearing on the financial obligations motion (the "Financial Obligations Hearing"). On March 16, 2025, the trial court issued its order (the "Financial Obligations Order") awarding the Town $512,623.52—$369,382.26 in attorneys' fees related to enforcing sewer

connection requirements, $72,108.48 in installation costs, and $72,198.78 in unpaid sewer charges.[3]  The trial court also "direct[ed] the Town's attorneys to submit any supplemental petitions for attorney[s'] fees in connection with this matter" within 15 days of the order.  Appellant's 1361 App. Vol. II at 114.

[12]  **Supplemental Attorneys' Fees.**  On March 26, in accordance with the Financial Obligations Order, the Town filed a supplemental petition requesting an additional $60,076.49 in attorneys' fees.  On April 16, over Hoagland's written objection, the trial court awarded the Town the additional $60,076.49.  Hoagland then initiated Appeal 1361.

[13]  **Appellate Attorneys' Fees & Nunc Pro Tunc Order.**  Meanwhile, on September 5, 2025, the Town filed a motion requesting (1) appellate attorneys' fees pursuant to this court's opinion in *Hoagland V*, 257 N.E.3d at 845–46; and (2) that the trial court "correct" the First Contempt Order because the Chronological Case Summary ("CCS") did not reflect the $19,920.00 fine imposed, Appellant's 3170 App. Vol. IX at 48.  On October 7, over Hoagland's written objection, the trial court awarded the Town $15,066.00 in appellate attorneys' fees, and it issued a nunc pro tunc order (the "Nunc Pro Tunc

---

[3] Adding together the attorneys' fees, installation costs, and unpaid sewer charges results in a total award of $513,689.52.  However, the trial court ordered Hoagland to pay the Town "the sum of Five Hundred Twelve Thousand Six Hundred Twenty-Three and 52/100 Dollars ($512,623.52)."  Appellant's 1361 App. Vol. II at 115.  Neither party challenges the $1,066.00 discrepancy.

Order") regarding the First Contempt Order. Hoagland then initiated Appeal 3170.

[14] We address the issues raised by Appeals 1361 and 3170 in this single decision. Additional facts will be provided below as necessary.

## Discussion and Decision

### 1. The Trial Court Did Not Abuse Its Discretion by Denying Hoagland Leave to File a Counterclaim

[15] Hoagland argues the trial court erred by denying its motion for leave to amend its answer and subsequent motion to correct error. Pursuant to Indiana Trial Rule 15(A), once a case is past the pleading stage, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." An amendment can essentially "restart[] a lawsuit," and this rule "encourage[s] early amendment" to avoid such starts and stops. *Brooks v. USA Track & Field, Inc.*, 272 N.E.3d 490, 496 (Ind. 2025), *reh'g denied* (Feb. 13, 2026). Trial Rule 15(A) also "ensure[s] both litigants (who often encounter new, critical information during discovery) and the court have some flexibility." *Id.*

[16] Trial courts have broad discretion in ruling on motions to amend pleadings, and we review such rulings for an abuse of discretion. *Stone v. Wright*, 133 N.E.3d 210, 219 (Ind. Ct. App. 2019) (citing *MAPCO Coal Inc. v. Godwin*, 786 N.E.2d 769, 777 (Ind. Ct. App. 2003)). An abuse of discretion occurs if the trial court's decision "was against the logic and effect of the facts and circumstances before"

it, *Willow Haven on 106th St., LLC v. Nagireddy*, 252 N.E.3d 418, 422 (Ind. 2025) (quoting *Wisner v. Laney*, 984 N.E.2d 1201, 1205 (Ind. 2012)), or if it misinterpreted the law, *id.* (citing *Members of Med. Licensing Bd. of Ind. v. Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky., Inc.*, 211 N.E.3d 957, 964 (Ind. 2023), *reh'g denied*). In determining whether a trial court abused its discretion in ruling on a Trial Rule 15(A) motion, we look to a number of factors, including (1) "undue delay, bad faith, or dilatory motive" on the movant's part; (2) "repeated failure to cure deficiency by amendment previously allowed"; (3) "undue prejudice to the opposing party by virtue of the amendment"; and (4) "futility of the amendment." *Stone*, 133 N.E.3d at 220 (citing *Godwin*, 786 N.E.2d at 777).

[17] Hoagland specifically contends that the Indiana Supreme Court in *Hoagland VI* "concluded that [Hoagland] has a right to pursue its claims in this case," so the trial court erred by denying Hoagland's amendment motion. Appellant's Am. 1361 Br. at 49. The Indiana Supreme Court's holding in *Hoagland VI* was not as broad as Hoagland now reads it. On the narrow issue of whether Hoagland's complaint in the 2023 Cause should be dismissed with or without prejudice, the *Hoagland VI* court held that the dismissal with prejudice "essentially denied Hoagland an *opportunity* to litigate its claims." *Hoagland VI*, 253 N.E.3d at 1110 (emphasis added). The *Hoagland VI* court stated that Hoagland could "certainly *attempt*" to litigate its claims in the 2010 Cause, *id.* at 1110 (emphasis added), and it also expressly refused to "address the merits of Hoagland's claims," *id.* at 1110–11. None of this language gives Hoagland the *right* to amend its answer

in the 2010 Cause; instead, it only informs Hoagland that its claims in the 2023 Cause could *possibly* be litigated in the 2010 Cause. *See id.* That is, the Indiana Supreme Court did not limit the trial court's Trial Rule 15(A) discretion in the 2010 Cause.

[18] Furthermore, Hoagland does not contend that at the time it filed its motion, justice required the trial court to grant it. Hoagland does not try to explain why it should be allowed to amend its answer after more than 14 years, whether the Town would be unduly prejudiced by the amendment, whether the amendment would be futile, and any other relevant considerations under Trial Rule 15(A).

[19] Based on the foregoing, the trial court did not abuse its discretion by denying the motion for leave to amend and subsequent motion to correct error.

## 2. The Trial Court Did Not Err by Ordering Hoagland to Pay the Town $512,623.52

[20] Hoagland challenges the Financial Obligations Order on multiple fronts. The trial court entered findings and conclusions in that order, so we review for clear error, *see Norris v. Norris*, 275 N.E.3d 505, 509 (Ind. 2026) (citing *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016)), unless otherwise noted. In reviewing for clear error, "we determine whether the evidence supports the court's findings and whether those findings support the court's judgment." *Id.* (citing *Steele-Giri*, 51 N.E.3d at 123). A decision is clearly erroneous "only if the findings lack factual support in the record or if the judgment applies the wrong legal standard to properly found facts." *Id.* (citing *Wysocki v. Johnson*, 18 N.E.3d

600, 603–04 (Ind. 2014)). We will not reweigh the evidence or judge witness credibility, *id.* (citing *Steele-Giri*, 51 N.E.3d at 124), and we consider only the evidence and reasonable inferences that support the trial court's decision, *In re Ma.H.*, 134 N.E.3d 41, 45 (Ind. 2019) (citing *In re K.E.*, 39 N.E.3d 641, 646 (Ind. 2015)). For issues not covered by the findings, we apply our general judgment standard, meaning we "should affirm based on any legal theory supported by the evidence." *State ex rel. Dep't Nat. Res. v. Leonard*, 226 N.E.3d 198, 202 (Ind. 2024) (citing *Steele-Giri*, 51 N.E.3d at 123–24; Ind. Trial Rule 52(D)).

[21] Hoagland argues the trial court erred by (a) taking judicial notice of certain documents and facts, (b) failing to enforce the parties' alleged settlement agreement, (c) awarding the Town the costs it incurred in connecting Hoagland's properties to the Sewer, (d) awarding the Town the monthly sewer charges Hoagland had not yet paid, and (e) awarding the Town attorneys' fees related to enforcing the Connection Order. We address each argument in turn.

### a. *Judicial Notice*

[22] Hoagland claims the trial court erred by (i) taking judicial notice of certain documents and facts, and (ii) not holding a hearing on whether to take judicial notice thereof. We address each claim in turn.

### i.   Judicial Notice

[23] At the Town's request, the trial court took judicial notice of the following:

1. "all the Town's codified ordinances which were in place when the Town filed its lawsuit in June 2010," Appellant's 1361 App. Vol. II at 109;
2. Steuben County Local Rule LR76-AR00-12;
3. a letter Hoagland "sent to the Town and Midwest Utilities dated April 15, 2002, . . . which stated, in part: 'we are not participating in the Clear Lake Sewer System at this time and we will not be paying any sewer bills,'" *id.* at 110;
4. its order dated August 27, 2015, in which it required Hoagland's properties "'to be connected' as referenced in [Clear Lake Code section] 51.51(B)(3)," *id.*;
5. three verified pleadings in Cause 76D01-0504-PL-0191, signed by Daniel, regarding the receipt of Sewer-related bills from the Town;
6. a September 14, 2024, email from Hoagland to the Town's Billing Clerk;
7. the lack of a record in the Town's Clerk-Treasurer's office of "any payment received . . . from Hoagland for charges imposed by the Rate Ordinances," Appellant's 1361 App. Vol. VIII at 4; *see* Appellant's 1361 App. Vol. II at 92;
8. a spreadsheet of the monthly sewer charges Hoagland owed between March 1, 2003, and October 15, 2024;
9. billing records related to installing Hoagland's Sewer connections; and
10. the December 10, 2024, affidavits of Patricia Koesters Short and Jennifer Smith-Sattison, attesting "to the mailing of annual payment books for monthly sewer charges," Appellant's 1361 App. Vol. II at 111.

[24] Pursuant to Indiana Evidence Rule 201, a trial court may judicially notice a fact that "is not subject to reasonable dispute because it is generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Ind. Evidence Rule 201(a)(1). A trial court may also judicially notice "published regulations of governmental agencies," *id.* 201(a)(2)(A), (b)(3); "ordinances of municipalities," *id.* 201(a)(2)(B), (b)(4); "rules of court," *id.* 201(b)(2); and "records of a court of this state," *id.* 201(a)(2)(C), (b)(5).

"[W]e review a trial court's decision to take judicial notice . . . , like other evidentiary decisions, for abuse of discretion." *Horton v. State*, 51 N.E.3d 1154, 1157 (Ind. 2016) (citing *Storey v. Leonas*, 904 N.E.2d 229, 236 (Ind. Ct. App. 2009), *trans. denied*; *McCarthy v. State*, 749 N.E.2d 528, 536 (Ind. 2001)). "[W]e may affirm the trial court's decision on any basis supported by the record," *Means v. State*, 201 N.E.3d 1158, 1163 (Ind. 2023) (citing *Ramirez v. State*, 174 N.E.3d 181, 190 n.2 (Ind. 2021)), and we will reverse "only where the decision is clearly against the logic and effect of the facts and circumstances," *Russell v. State*, 234 N.E.3d 829, 858 (Ind.) (quoting *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001)), *cert. denied*, 145 S. Ct. 424 (2024).

Hoagland specifically argues that the trial court "took judicial notice of substantive facts *in lieu of live testimony subject to cross-examination*." Appellant's Am. 1361 Br. at 51 (emphasis in original). Hoagland points to "copies maintained in Town Clerk's office, an Affidavit of Nathan Striker, Clerk-Treasurer, *billing records of a third party,* a statement that *no record* existed, a letter, and an email" as "example[s]" of improperly judicially noticed documents and facts. *Id.* (emphases in original) (citing Appellant's 1361 App. Vol. II at 92). However, Hoagland does not explain why the trial court could not take judicial notice of any of this evidence under Evidence Rule 201. *See id.* at 51–52; Appellant's 1361 Reply Br. at 25–27. "We will not step in the shoes of the advocate and fashion arguments on his behalf, 'nor will we address arguments' that are 'too poorly developed or improperly expressed to be understood.'" *Miller v. Patel*, 212 N.E.3d 639, 657 (Ind. 2023) (quoting *Dridi v. Cole Kline LLC*,

172 N.E.3d 361, 364 (Ind. Ct. App. 2021)). Hoagland's failure to present cogent argument on this issue, as required by Indiana Appellate Rule 46(A)(8)(a), is "sufficiently substantial to impede our consideration" thereof such that we cannot address its merits, *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) (quoting *Guardiola v. State*, 375 N.E.2d 1105, 1107 (Ind. 1978)).[4] Because Hoagland has waived this claim for our review, we cannot say the trial court abused its discretion by taking judicial notice of certain documents and facts.

### ii.  Opportunity to Be Heard

[27] Evidence Rule 201(e) provides that "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed.  If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard."

---

[4] In the last sentence of its two-paragraph argument regarding the judicially noticed evidence, Hoagland references "our Constitution and confrontation clause."  Appellant's Am. 1361 Br. at 52.  Hoagland does not develop this argument further, so it is waived for our review.  *See* Ind. Appellate Rule 46(A)(8)(a) (requiring cogent reasoning); *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) (holding that an appellate claim may be waived for significant noncompliance with the Indiana Appellate Rules).

Additionally, in its Appeal 1361 reply brief, Hoagland argues that the trial court erred by taking judicial notice *after* the Financial Obligations Hearing.  Hoagland did not make this argument in its Appeal 1361 opening brief, so Hoagland has waived it for our review.  *See Steele v. Steuben Lakes Reg'l Waste Dist.*, 168 N.E.3d 1000, 1004 (Ind. Ct. App. 2021) (citing *Bowman v. State*, 51 N.E.3d 1174, 1180–81 (Ind. 2016)) ("[A]n issue cannot be raised for the first time on appeal in a reply brief.").  Waiver notwithstanding, Evidence Rule 201 plainly allows a trial court to "take judicial notice at *any stage* of a proceeding."  Ind. Evidence Rule 201(d) (emphasis added); *see also In re Paternity of P.R.*, 940 N.E.2d 346, 350 (Ind. Ct. App. 2010) (recognizing same).

[28] In its Appeal 1361 opening brief, Hoagland asserts without citation, "The Trial Court refused to allow a hearing under Rule 201(e) . . . ." Appellant's Am. 1361 Br. at 52–53. This is the only argument Hoagland provides on the issue in its opening brief. *See id.* It is not until its reply brief that Hoagland supports this argument with a citation to the Record on Appeal, namely, its response to the Town's December 21, 2024, motion to take judicial notice. Appellant's 1361 Reply Br. at 27–28 (citing Appellant's 1361 App. Vol. X at 153). In that response, Hoagland stated,

> Even if the Court did allow the Town to present additional evidence, after it rested, fundamental fairness and Rule 201(e) would dictate that [Hoagland] be given the opportunity to respond. There is a lot of context and history to [Cause 76D01-0504-PL-0191] that [Hoagland] would have presented had the Town properly raised the 20[-]year[-]old complaint at the hearing on December 17, 2024.

Appellant's 1361 App. Vol. X at 153.

[29] Assuming arguendo that this statement constitutes a request under Evidence Rule 201(e), Hoagland does not explain how it was prejudiced by the lack of a hearing on the Town's motion. *See* Ind. Appellate Rule 66(A) (error is harmless if "its probable impact, in light of all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties"); *cf. Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 758 (Ind. 2018) (holding failure to hold hearing on T.R. 37(A)(4) award was harmless where parties litigated the issue in writing and hearing would not have revealed anything the written record did

not supply).  We therefore must conclude that any error caused by the trial court not holding a hearing on the Town's motion to take judicial notice was harmless.

### b. *Settlement Agreement*

[30]  Hoagland contends the trial court erred by failing to enforce a settlement agreement the parties allegedly entered into in April 2021.  On October 13, 2021, Hoagland filed a Motion to Enforce Settlement Agreement, representing that on April 12, 2021, Hoagland and the Town "met and agreed upon the process" by which Hoagland would connect to the Sewer.  Appellant's 1361 App. Vol. III at 91.  The Town filed a written objection, and on October 18, the trial court denied Hoagland's motion.  Four years later at the Financial Obligations Hearing, Hoagland attempted to question Daniel about the alleged settlement agreement.  The Town objected, and the trial court sustained that objection.  Hoagland then made an offer of proof regarding the alleged settlement agreement.  In the Financial Obligations Order, the trial court rejected Hoagland's argument that the parties had reached a settlement, finding instead that Hoagland connected to the Sewer only after extensive litigation, including two contempt findings.

[31]  On appeal, Hoagland maintains that the alleged settlement agreement was enforceable and the Town breached it.  The Town argues that Hoagland has waived any challenge regarding the enforceability of the alleged settlement agreement because Hoagland does not first challenge the exclusion of the

settlement agreement evidence. That is, the Town contends we cannot consider the offer of proof in reviewing the Financial Obligations Order.

[32] "An offer of proof allows the trial and appellate courts to determine the admissibility of the testimony, as well as the potential for prejudice if it is excluded." *Heckard v. State*, 118 N.E.3d 823, 828 (Ind. Ct. App. 2019) (citing *Dylak v. State*, 850 N.E.2d 401, 408 (Ind. Ct. App. 2006), *trans. denied*), *trans. denied*. "The offer of proof is part of the record only insofar as the [party] chooses to challenge the trial court's exclusion." *Bradford v. State*, 675 N.E.2d 296, 302 (Ind. 1996). We typically "may not consider evidence outside the record presented to the trial court in resolving an appeal." *Banks v. Banks*, 980 N.E.2d 423, 426 (Ind. Ct. App. 2012) (citing *In re D.Q.*, 745 N.E.2d 904, 906 n.1 (Ind. Ct. App. 2001)). Consequently, when a party makes an offer of proof at the trial level but does not challenge the propriety of the trial court's exclusion of that evidence on appeal, we will not consider the proffered evidence in ruling on any other issue. *Bradford*, 675 N.E.2d at 302.

[33] Hoagland does not claim that the trial court erred by excluding evidence concerning the alleged settlement agreement. In fact, Hoagland expressly states that it "is not arguing that the Trial Court erred in excluding testimony during" the Financial Obligations Hearing. Appellant's 1361 Reply Br. at 12. Hoagland instead frames its claim as a challenge to the original denial of the Motion to Enforce Settlement Agreement. However, Hoagland's argument overlooks its own attempt to obtain a new ruling using new evidence at the Financial Obligations Hearing on the enforceability of the alleged settlement

agreement. The trial court's exclusion of the settlement agreement evidence and rejection of Hoagland's settlement agreement argument is the operative ruling from which Hoagland now appeals. *Cf. In re A.C.*, 198 N.E.3d 1, 9 (Ind. Ct. App. 2022) (determining no relief available for parents who challenged child's removal based on first removal order when dispositional order had been issued). Hoagland's failure to challenge the exclusion of the settlement agreement evidence is therefore fatal to its appellate claim. *See Bradford*, 675 N.E.2d at 302. Based on the foregoing, we cannot say the trial court clearly erred by not enforcing the alleged settlement agreement.[5]

### c. Sewer Connection Costs

[34] Hoagland asserts the trial court erred by awarding the Town $72,108.48 for the costs of connecting Hoagland's properties to the Sewer (the "Connection Costs"). In the Financial Obligations Order, the trial court found and concluded in relevant part as follows:

> 23. Dan Hoagland testified in . . . Cause No. 76C01-1006-PL-425, on March 16, 2018, as contained in the transcript thereof:
>
>> []Question. []And what amount do you believe that you were supposed to pay?

---

[5] Hoagland also argues that it was denied due process because the trial court did not hold a hearing on its October 2021 motion to enforce the alleged settlement agreement, but Hoagland fails to analyze the applicable due process law. Hoagland has thus waived this claim for our review. *See* App. R. 46(A)(8)(a); *Pierce*, 29 N.E.3d at 1267.

Ans. *$200 per property.*

Question. Okay, and did that include the Town provide the grinder pump? Ans. *Yes it does.*

Question. And again, once the grinder pump is installed by the Town, would it then be your responsibility to connect your home to the grinder pump?

Ans. *As-assuming the grinder pump's is, is installed and functioning, yes.*

This testimony would be consistent with the requirements of [Clear Lake Code] § 51.52(A)(3) and [Clear Lake Code] § 51.62(B)(1).

24. Dan Hoagland's testimony on December 17, 2024, was contrary to his testimony on March 16, 2018 . . . .

25. [Hoagland] is responsible for the . . . expenses incurred by the Town for the extension of house lateral sewers to Hoagland's properties.

   * * *

29. [Hoagland] owes the Town, pursuant to [Clear Lake Code] § 51.52(A)(3), the sum of $72,108.48 which consists of costs of installation of the building sewer[] lines for [Hoagland]'s three (3) properties to connect to the Town-owned grinder pump station, including engineering expenses, directional drilling expenses, survey expenses, and landscape restoration.

Appellant's 1361 App. Vol. II at 112–14 (emphases in original).

[35] Hoagland specifically argues that the trial court erred by (i) awarding the Connection Costs pursuant to Clear Lake Code section 51.52(A)(3), and (ii) determining the Town provided grinder pumps at no cost to Hoagland. We address each argument in turn.

### i.    Reliance on Clear Lake Code Section 51.52(A)(3)

[36] In *Hoagland II*, this court determined that the Clear Lake ordinances in place when the Town initiated the 2010 Cause are the applicable ordinances for determining the Sewer connection expenses Hoagland owes. 131 N.E.3d at 737–38.

[37] First, Hoagland seems to contend that the trial court could not rely on the version of Clear Lake Code section 51.52(A)(3) in effect in 2010 because "the only ordinances introduced into evidence [at the Financial Obligations Hearing] were Ordinance 275, Ordinance 2007-01, and Ordinance 2022-02." Appellant's Am. 1361 Br. at 40. However, in the Financial Obligations Order, the trial court stated that it "took judicial notice of all the Town's codified ordinances which were in place when the Town filed its lawsuit in June 2010, including those upon which the Town relied in its claims against [Hoagland]." Appellant's 1361 App. Vol. II at 109.

[38] Although not included in Hoagland's Appeal 1361 Appendix or Supplemental Appendix, the version of Chapter 51 of the Clear Lake Code in effect when the Town initiated the 2010 Cause is in the Record. On March 12, 2021, the Town filed an affidavit from the Town's Clerk-Treasurer Jessica Swander with the

relevant version of Chapter 51 attached thereto.  Appellee's 1361 Addend. at 3–5, 16–35.[6]  The version of Section 51.52(A)(3) in effect in 2010 was originally enacted in June 2003 as part of Ordinance 285, *id.* at 35, and provided in relevant part that "[a]ll costs and expenses incidental to the installation and connection of the building sewer shall be borne by the owner," *id.* at 34.

[39]  The trial court had the entire record of this case at its disposal and specifically stated it was taking judicial notice of the relevant version of Chapter 51 of the Clear Lake Code.  Under these circumstances, we cannot agree with Hoagland that Section 51.52(A)(3) was not admitted into evidence.  *See* Evid. R. 201.

[40]  Hoagland next asserts that in *Hoagland II*, this court "held that the applicable ordinance at the time required property owners to pay only $200 per parcel for connection and did not require payment for grinder pumps."  Appellant's Am. 1361 Br. at 41 (citing *Hoagland II*, 131 N.E.3d at 737).  The *Hoagland II* court did state, "The Clear Lake ordinance in place at the time the Town filed its lawsuit in June 2010 required that property owners pay a total of $200 per parcel of property for connection costs and did not require the owners to pay for the grinder pump(s)."  131 N.E.3d at 737 (citing Ex. Vol. I at 239, *Hoagland II*, 131 N.E.3d 731 (No. 18A-PL-2088)).  For this statement, the *Hoagland II* court relied on the minutes of an October 2010 Town Council meeting, in which the

---

[6] The Town provided Swander's affidavit and attachments in an Addendum to its Appeal 1361 brief.  Even if the Town had not done so, we could take judicial notice thereof pursuant to Appellate Rule 27 and Evidence Rule 201.  *See Horton v. State*, 51 N.E.3d 1154, 1156 (Ind. 2016) (taking judicial notice under Evidence Rule 201 of documents that were part of the Record on Appeal as defined in Appellate Rule 27).

Town Council stated, "There will be an *inspection fee* of $200 to connect from the house to the grinder with that cost paid by the Hoagland's [sic]." Ex. Vol. I at 239, *Hoagland II*, 131 N.E.3d 731 (No. 18A-PL-2088) (emphasis added).

[41] The applicable version of Clear Lake Code section 51.27 tracks the Town Council's statement:

> The owner of any lot, parcel of real estate, or building, filing an application to connect to the sewage works and being permitted to connect to the town shall, prior to being permitted to make a connection, pay a connection charge of:
>
> (A) For connections for properties that are included in the initially approved sewer project as defined by the final plans and specifications as of October 1, 2001, . . . *the connection fee shall be $200 to cover the cost of processing the connection application and conducting the inspection of the connection*.
>
> (B) For connections that are not included in the initially approved sewer project as of October 1, 2001, *shall pay the combined amount of $200 to cover the cost of processing the connection application and conducting the inspection of the connection*.
>
> (C) *Plus*: *the cost of making the public sewer suitable for connection*, including excavation, backfill, pavement replacement, and the components of the public sewer required for connection including, but not limited to, the grinder pump.

Appellee's 1361 Addend. at 26 (emphases added).

[42] The *Hoagland II* court's understanding of the connection costs incurred pursuant to Section 51.27 does not obviate its holding that this case is governed by the

ordinances in place "at the time the Town made its original connection demand and/or at the time the Town filed the lawsuit." 131 N.E.3d at 738. The trial court adhered to that holding in the Financial Obligations Order by applying the relevant version of Section 51.52(A)(3).

[43] Similarly, Hoagland claims the Town was prohibited from seeking and obtaining the Connection Costs because they amount to a "punishment for declining to gift an easement to [the] Town." Appellant's Am. 1361 Br. at 41. In support, Hoagland relies on this court's holding in *Hoagland II* that applying the Town's ordinances enacted *after* the 2010 Cause began—which imposed higher costs for connecting to the Sewer—was not permissible and "effectively punish[ed] [Hoagland] for its refusal to gift an easement to the Town." 131 N.E.3d at 738 (citing *Steuben Lakes Reg'l Waste Dist. v. Tucker*, 904 N.E.2d 718, 722 (Ind. Ct. App. 2009)).

[44] Rather than being at odds with this holding from *Hoagland II*, the trial court's award of the Connection Costs is directly in line therewith. Again, the trial court awarded the Connection Costs pursuant to the version of Clear Lake Code section 51.52(A)(3) in effect when the 2010 Cause commenced. That is exactly what the *Hoagland II* court instructed the trial court to do.

### ii. Provision of Grinder Pumps

[45] Hoagland argues the trial court clearly erred by failing to find that the Town did not supply Hoagland with grinder pumps or related hardware. That is,

Hoagland maintains the trial court should have found that the Town was required to provide grinder pumps free of charge to Hoagland but did not do so.

[46] At the Financial Obligations Hearing, the Town's engineer testified that the Town provided two grinder pumps for Hoagland's properties and did not charge Hoagland therefor. The record further reveals that the Town did not seek reimbursement for the grinder pumps, which the trial court acknowledged in the Financial Obligations Order: "The Town does not seek to recover the cost of the town-owned grinder pump . . . or the grinder pump station," Appellant's 1361 App. Vol. II at 109. Instead, the Town sought reimbursement for only the following expenses: (1) "$21,500.00 . . . for installation of building sewer lines between the Town's grinder pump stations and Hoagland's three (3) properties which were installed exclusively for connection of Hoagland's properties," Appellant's 1361 App. Vol. VII at 100; *see id.* at 148–49; (2) "$454.21," *id.* at 101, "for landscape work related to the connection of Hoagland's properties [that] is chargeable to Hoagland," *id.* at 100–01; *see id.* at 151–52; (3) "$2,375.00 for survey work related to the connection of . . . Hoagland's properties to the Town's sewer system," *id.* at 101; *see id.* at 154; and (4) "$47,777.27" for an engineering company "to engineer and locate house sewer laterals for the Hoagland properties and provide sewer construction

supervision as well as inspection of house sewer connections of the three (3) sewer services to the Hoagland properties," *id.* at 101; *see id.* at 168, 170.[7]

[47] To the extent Hoagland had to purchase and install a secondary grinder pump "as part of the private building sewer," 1361 Tr. Vol. II at 83, this was allowed pursuant to Clear Lake Code sections 51.27(C) and 51.52(A)(3). Moreover, Hoagland's reliance on contrary evidence to show that the Town "strong-arm[ed Hoagland] under the threat of imprisonment to purchase grinder pumps and related components at its own expense," Appellant's Am. 1361 Br. at 44, is a request for us to reweigh the evidence and reassess witness credibility, which we cannot do. The trial court did not clearly err by awarding the Town the Connection Costs.

### d. Sewer Charges

[48] Hoagland contends the trial court clearly erred by concluding Hoagland owes the Town $72,198.78 in accrued and unpaid sewer charges. Hoagland challenges this ruling on three bases: (i) a prior ruling in this case prohibited the Town from collecting sewer charges from Hoagland, (ii) certain ordinances prohibit the Town from imposing sewer charges on Hoagland for the time period Hoagland's properties were not connected, and (iii) the Town cannot

---

[7] These expenses total $72,106.48, but the trial court awarded the Town "$72,108.48," Appellant's 1361 App. Vol. II at 114. Neither party challenges the $2.00 discrepancy.

hold Hoagland liable for sewer charges for which the Town failed to bill Hoagland. We address each challenge in turn.

### i. Prior Ruling

[49] Hoagland claims that the trial court, in an order dated May 4, 2016, "held that . . . the Town could not collect rates or charges because [Hoagland] was not connected [to the Sewer] and had never been billed as required by ordinance." Appellant's Am. 1361 Br. at 54–55. Thus, according to Hoagland, the law-of-the-case doctrine prevented the trial court from holding it liable for unpaid sewer charges in the Financial Obligations Order.

[50] The May 4, 2016, order does not even mention sewer charges, let alone include a ruling on whether and under what circumstances Hoagland owes such charges.[8] *See* Appellant's 1361 App. Vol. IX at 6–17. Furthermore, the law-of-the-case doctrine only applies when an issue has already been "determined in a previous *appeal* in the same case." *Isom v. State*, 170 N.E.3d 623, 658 (Ind. 2021) (emphasis added) (quoting *State v. Timbs*, 169 N.E.3d 361, 369 (Ind. 2021)). The law-of-the-case doctrine clearly does not apply here.

---

[8] Although the Town in its briefing brought to Hoagland's attention that the May 4, 2016, order "says nothing about charges," Appellee's 1361 Br. at 42 (citing Appellant's 1361 App. Vol. IX at 6), Hoagland failed to explain in its reply brief why it misrepresented the substance of that order, *see* Appellant's 1361 Reply Br. at 17–19. We remind Hoagland's counsel of his obligations under the Indiana Professional Conduct Rules, particularly his duty to not "knowingly . . . fail to correct a false statement of material fact . . . previously made to the tribunal by the lawyer," Ind. Professional Conduct Rule 3.3(a)(1).

### ii. Connection Required to Bill

Hoagland argues that the trial court erred by holding it liable for unpaid sewer charges for the time period it was not connected to the Sewer. The trial court concluded that Hoagland owed the Town unpaid sewer charges pursuant to Clear Lake Code section 51.22(B)(3), which provides as follows:

> In order to produce an amount sufficient to meet the interest on the revenue bonds and other expenses payable prior to the completion of the works after the contract for construction of sewer system has let and the actual work commenced thereunder, the owners of each and every lot, parcel of real estate, or building to be connected with the town's sanitary sewerage system, as a result of construction of the works, shall pay each month 50% of the rates and charges established above for each such building to be connected. Beginning with the first month after the sanitary sewers are available for connection and use to any lot, parcel of real estate, or building, the full rates and charges shall become effective for the lot, parcel of real estate, or building; but in any event, the full rates and charges shall become effective no later than February 1, 2003, so that billings for full rates and charges shall be rendered no later than March 1, 2003.

Appellee's 1361 Addend. at 24.

Hoagland does not cite Section 51.22(B)(3) and instead asserts that Section 51.22(A) requires a property be connected to the Sewer before the Town can

impose sewer charges on the property owner.[9]  Prior to 2022, Section 51.22(A) provided as follows:

> For the use of the service rendered by the sewage works, rates and charges shall be collected from the owners of each and every lot, parcel of real estate, or building that is connected with the Town sanitary sewer system or otherwise discharges sanitary sewage, industrial wastes, water, or other liquids, either directly or indirectly, into the sanitary sewer system of the Town.

Appellant's 1361 App. Vol. VII at 105–06; *see also id.* at 115.  On March 15, 2022, Section 51.22(A) was amended as follows:

> For the use of the service rendered by the sewage works, rates and charges shall be collected from the owners of each and every lot, parcel of real estate or building that is discharging wastes, water or other liquids, either directly or indirectly, into the sanitary sewage system of the Town.

*Id.* at 126; *see id.* at 131.

---

[9] In its briefing, Hoagland does not reference Section 51.22(A) but references Section 3 of Ordinances 275, 2007-01, and 2022-02, which became Section 51.22.  More importantly, in its Appeal 1361 opening brief, Hoagland does not provide any record citations in support of its statements regarding these ordinances.  We remind Hoagland that Appellate Rule 46(A)(8)(a) expressly requires that all statements of fact be supported by record citations.  The purpose of our appellate rules—especially Appellate Rule 46 governing the content of briefs—"is to aid and expedite review and *to relieve the appellate court of the burden of searching the record and briefing the case.*"  *Miller v. Patel*, 212 N.E.3d 639, 657 (Ind. 2023) (emphasis added) (quoting *Dridi v. Cole Kline LLC*, 172 N.E.3d 361, 364 (Ind. Ct. App. 2021)).  This is particularly true in a case such as Appeal 1361 where there are 4 transcript volumes, 11 appendix volumes, and 2 supplemental appendix volumes.  Nevertheless, we have chosen to review the merits of Hoagland's connection requirement argument.  *See Pierce*, 29 N.E.3d at 1267.

In ruling that Hoagland owed the Town unpaid sewer charges pursuant to Clear Lake Code section 51.22(B)(3), the trial court "took judicial notice of the Court's Order of August 27, 2015." Appellant's 1361 App. Vol. II at 110. That order addressed a motion for summary judgment filed by Hoagland, in which Hoagland contended in part that the Town "cannot assess fees and charges as a result of Hoagland's failure to connect to Town's sewage disposal system" because Clear Lake Code section 51.22(A) "addresses the issue of fees and charges to be assessed against property owners 'who are connected' to Town's sanitary sewer system." Order at 6, *Town of Clear Lake v. Hoagland Fam. Ltd. P'ship*, No. 76C01-1006-PL-425 (Ind. Steuben Cir. Ct. Aug. 27, 2015).[10] Reading Section 51.22(A) "in conjunction with" Sections 51.22(B)(3) and 51.51[11] "to determine those property owners who are required to connect to [the Sewer] and who thereby may properly be assessed fees and charges for its construction and operation," *id.* at 7, the trial court concluded,

---

[10] Although the trial court took judicial notice of the August 27, 2015, order, Hoagland does not include that order in its Appeal 1361 Appendix or Supplemental Appendix. Regardless, that order is part of the Record, so we have taken judicial notice thereof pursuant to Appellate Rule 27 and Evidence Rule 201. *See Horton*, 51 N.E.3d at 1156.

[11] As quoted in the August 27, 2015, order, Section 51.51(A) provided as follows:

> (A) The owner of all houses, buildings or property used for human occupancy, employment recreation or other purposes situated within the town and which the property line is within 300 feet of the sanitary sewer is required at his or her expense to install suitable toilet facilities therein and to connect such facilities directly with the proper sewer in accordance with the provisions of this chapter. Any person constructing a new house or other building for occupancy, employment, recreation, industrial or commercial activity within the town and there is access to a sanitary sewer, must connect to such sanitary sewer in accordance with applicable ordinances and regulations, and shall not discharge sewage elsewhere.

Order at 7–8, *Town of Clear Lake v. Hoagland Fam. Ltd. P'ship*, No. 76C01-1006-PL-425 (Ind. Steuben Cir. Ct. Aug. 27, 2015).

> [T]he ordinances enacted by Town specifically authorize the collection of certain designated expenses, costs and fees against <u>all</u> property owners whose property line is within 300 feet of the [S]ewer, and mandates the owners of said property to connect to the [S]ewer . . . . The ordinances enacted by Town cannot be logically read to mean that a property owner, by simply refusing to connect to the sewage system, can avoid the payment of fees, costs and expenses which have become due and payable per duly enacted Town ordinance[,]

*id.* at 8 (emphasis in original). Because the trial court determined that Hoagland was required to connect to the Sewer, it denied Hoagland's summary judgment motion on its sewer charges claim.

[54] Hoagland raises the same argument on appeal as it did in 2015. Hoagland does not, however, address the trial court's reasoning for rejecting this argument— either in 2015 or in the Financial Obligations Order. For example, Hoagland neither cites to nor explains the effect of Sections 51.22(B)(3) or 51.51. Similarly, Hoagland relies on *City of Hobart Sewage Works v. McCullough*, 656 N.E.2d 1185 (Ind. Ct. App. 1995), *trans. denied*, for the proposition that "rates and charges are only collected from property owners who are connected to the sanitary system," Appellant's Am. 1361 Br. at 54 (citing *McCullough*, 656 N.E.2d 1185); *see also* Appellant's 1361 Reply Br. at 18–19, but Hoagland does not address the trial court's conclusion in the August 27, 2015, order that the facts of *McCullough* are "distinguishable from those in the case at bar," Order at 8, *Town of Clear Lake v. Hoagland Fam. Ltd. P'ship*, No. 76C01-1006-PL-425 (Ind. Steuben Cir. Ct. Aug. 27, 2015). Without more, we cannot say the trial court

erred by determining Hoagland was liable for unpaid sewer charges despite not being connected to the Sewer when those charges became due.

### iii. Failure to Bill

[55] Hoagland claims the trial court erred by holding it liable for unpaid sewer charges when the Town failed to bill Hoagland for those charges. In support, Hoagland relies on an offer of proof it claims "demonstrates that [the] Town never prepared or issued monthly sewer bills to [Hoagland] or its partners from 2002 through 2023." Appellant's Am. 1361 Br. at 53 (citing 1361 Tr. Vol. II at 13–18). Hoagland does not challenge the exclusion of the evidence addressed by the offer of proof, so we cannot consider that evidence. *See Bradford*, 675 N.E.2d at 302.

[56] Outside of the offer of proof, Daniel testified that he did not receive any monthly sewer bills from the Town from 2002 through 2023. The trial court specifically discredited this testimony:

> [T]he Court, having considered the testimony of Daniel E. Hoagland given in open court on December 17, 2024, now finds that Daniel Hoagland's testimony, as the general partner of Hoagland . . . , that neither he nor his wife nor Hoagland . . . received any billings for sewer rate charges was inconsistent with previously given testimony and the Court negatively considers the statements' inconsistencies when assessing weight and credibility of testimony.

Appellant's 1361 App. Vol. II at 101; *see also id.* at 110–11. Hoagland's argument is therefore a request for us to reweigh the evidence and reassess

witness credibility, which we cannot do. Consequently, we cannot say the trial court clearly erred by rejecting Hoagland's argument that the Town had not billed it for sewer charges, thereby negating Hoagland's obligation to pay those charges.

### e. *Attorneys' Fees*

[57] Hoagland challenges the trial court's decision to award the Town attorneys' fees pursuant to Indiana Code section 36-9-23-30. When a municipality, such as the Town, obtains a sewer connection order under Indiana Code section 36-9-23-30, then the trial court must "assess the cost of the action and reasonable attorneys' fees of the municipality against the property owner in such an action." Ind. Code § 36-9-23-30(d). "In other words, if a landowner refuses to connect to the public sewer system, thereby requiring the municipality to seek redress in the courts, the municipality is entitled to the cost of the action and its reasonable attorney[s'] fees." *Hoagland II*, 131 N.E.3d at 738.

[58] Hoagland specifically argues that it "never refused" to connect to the Sewer, Appellant's Am. 1361 Br. at 33, and instead "was asserting its property rights and demanding lawful procedure," *id.* at 36. As to Hoagland's refusal to connect, in *Hoagland II*, this court concluded that as of 2018, Hoagland had *not* refused to connect, so Indiana Code section 36-9-23-30(d) did not apply:

> Here, we cannot conclude that Hoagland has refused to connect. It refused to gift an easement to the Town, but it was always willing to undertake the connection process on its own, once the Town installed a "Y" connector to the existing sewer lines. Alternatively, it was willing to allow the Town to install a grinder

pump on its land and connect in that way—once Hoagland was fairly compensated for the easement. Under these circumstances, we find that the attorney fees statute does not apply.

131 N.E.3d at 738.

[59] According to the trial court's findings in the Financial Obligations Order, Hoagland's willingness to connect dissolved after *Hoagland II* was decided:

> 3. Following remand in *Hoagland II*, the Town resumed its efforts to require Hoagland to connect its three (3) properties to the Town's sewer system and abandon use of the septic systems on its properties. What ensued in this Court was a protracted process about the location of the grinder pumps, although the Court of Appeals clearly stated: "It is for the Town to decide the most prudent wa[y] to proceed[.]" [*Hoagland II*, 131 N.E.3d] at 739, fn.7.

> 4. On September 22, 2021, the Town filed its Motion to Schedule Hearing to Establish Connection Date, to which [Hoagland] filed numerous motions attempting to avoid connecting to the Town's sewer system.

> 5. The Court entered the "Connection Order" on October 21, 2021, and even then [Hoagland] persisted in filing motions to avoid connection.

> 6. [Hoagland] did not comply with the Connection Order, and following a hearing was found in contempt. ("First Contempt") [Hoagland] appealed, and the Court of Appeals, in [*Hoagland IV*] found: "the trial court acted within its discretion when it found that Hoagland willfully disobeyed it[s C]onnection Order." [207 N.E.3d 1220, No. 22A-PL-631, slip op. at ¶ 22.]

\* \* \*

8.  On September 8, 2023, [the] Town filed a motion to schedule a hearing to establish a new connection date, and following a telephonic conference on October 3, 2023, the Town requested and received permission to file a rule to show cause based upon the statement of [Hoagland]'s counsel: *"I believe the request is moot."* . . . *"It is our position that the courts made a connection order, there's no remaining issues."* . . . *"So, I would object to any hearing on this matter. The Court's already established a connection date, which with all due respect, my clients did not connect, and the Court's already found them in contempt. What's left Judge, I mean, why are we continuing to drag this out?*[*"*]

9.  [O]n December 28, 2023, the Court issued an order finding "Daniel Hoagland and Karen Hoagland are guilty of willful disobedience and subject to punishment by this Court for their contempt." Once again, this Court ordered connection of [Hoagland]'s three properties to the Town's sewage collection system, subject to potential fines and/or remand of partner Daniel Hoagland to the County Sheriff in the County jail if connection was not completed by a specified date.

10.  At various times in 2024[, Hoagland] ultimately connected its three properties to the Town's sewer system . . . .

Appellant's 1361 App. Vol. II at 105–07 (alterations 18 and 19 in original) (emphasis in original).

27.  . . . Many of the services performed by the Town's attorneys were necessary because of [Hoagland]'s repeated refusal to comply with the Court's orders and the filing of numerous repetitive and groundless motions.

28. The professional services of attorneys David Hawk, Bill Eberhard and Mark Crandley, exceed 1300 hours devoted to this matter, which in some cases span almost five (5) years, and include voluminous pleadings, numerous hearings and two (2) separate appeals which were necessary to secure connection of [Hoagland]'s three properties to the Town's sewer system.

*Id.* at 113.

[60] The trial court unequivocally held that Hoagland refused to connect to the Sewer after the Connection Order was entered. Hoagland's argument that it "never refused" to connect, Appellant's Am. 1361 Br. at 33, is a request for us to reweigh the evidence and reassess witness credibility, which we cannot do.

[61] As to whether Hoagland was asserting its property rights, we look to our decisions in *Steele v. Steuben Lakes Regional Waste District*, 168 N.E.3d 1000 (Ind. Ct. App. 2021), and *Steuben Lakes Regional Waste District v. Tucker*, 904 N.E.2d 718 (Ind. Ct. App. 2009). In both *Steele* and *Tucker*, the Steuben Lakes Regional Waste District "created a 'Constitutional dilemma'" for the landowners by "forcing them to either surrender their right to a condemnation proceeding or pay a higher connection charge and attorney[s'] fees." *Steele*, 168 N.E.3d at 1005 (quoting *Tucker*, 904 N.E.2d at 720); *see also id.* at 1002, 1005. The landowners in both cases did not refuse to connect to the sewer; instead, the cases arose out of good-faith disputes regarding how the connections would be accomplished. *Id.* at 1007.

[62] The facts of this case are easily distinguishable from those in *Steele* and *Tucker*. Here, once the trial court issued the Connection Order, Hoagland repeatedly

refused and sought to avoid connecting to the Sewer.[12]  In fact, Hoagland connected to the Sewer only after one of its general partners was threatened with jail time if Hoagland did not comply with the Connection Order. Although Hoagland may have initially been willing to connect to the Sewer, *Hoagland II*, 131 N.E.3d at 738, Hoagland consistently refused to connect once ordered to do so.  Unlike the landowners in *Steele* and *Tucker*, Hoagland refused to connect to the Sewer for years and that refusal was not based on a good-faith dispute concerning how the connection would be accomplished.  Based on the foregoing, the trial court did not clearly err by determining Hoagland refused to connect to the Sewer such that the Town was entitled to attorneys' fees under Indiana Code section 36-9-23-30(d).

### f. Summation

[63]  The trial court did not err by (a) taking judicial notice of certain documents and facts, (b) declining to enforce the alleged settlement agreement, (c) holding Hoagland liable for the Connection Costs, (d) holding Hoagland liable for unpaid sewer charges, and (e) awarding the Town attorneys' fees.  Accordingly, the trial court did not err by ordering Hoagland to pay the Town $512,623.52.

---

[12] Hoagland relies in part on the alleged settlement agreement to show "it was affirmatively agreeing to connect." Appellant's Am. 1361 Br. at 37.  As discussed in more detail above, we cannot consider any evidence contained in the offer of proof regarding the alleged settlement agreement, and the trial court rejected this argument.  *See supra* ¶ 33.

### 3. The Trial Court Did Not Err by Ordering Hoagland to Pay the Town $60,076.49 in Attorneys' Fees

[64] Hoagland contends the trial court erred by awarding the Town an additional $60,076.49 in attorneys' fees. In the Financial Obligations Order, the trial court "direct[ed] the Town's attorneys to submit any supplemental petitions for attorney[s'] fees in connection with this matter not later than fifteen (15) days following the entry of this order." Appellant's 1361 App. Vol. II at 114. Ten days after the trial court issued that order, the Town filed a supplemental petition, requesting $60,076.49 in attorneys' fees (the "Supplemental Fees"). On April 7, Hoagland filed an objection and response to that petition, including charts analyzing the time entries included therein. On April 16, without holding a hearing, the trial court granted the Town's petition:

> [T]he Town incurred $60,076.49 in additional attorney[s'] fees for services rendered by the Town's attorneys from October 2024 through February 2025 which are fair, reasonable and necessary attorneys' fees; . . . the Town shall recover [from] Hoagland . . . an additional sum of $60,076.49, which are supplemental to the attorneys' fees awarded under the [Financial Obligations Order].

*Id.* at 116.

[65] Before we address the merits of Hoagland's challenge to the Supplemental Fees award, we must first address Hoagland's argument that there are "two judgments on the CCS in the amount of $60,076.49." Appellant's 1361 Reply Br. at 28 (citing Appellant's 1361 App. Vol. II at 116; Appellant's 1361 Supp. App. Vol. II at 83–84); *see also* Appellant's Am. 1361 Br. at 55–56. On April 21,

2025, the trial court issued the April 16 order; the corresponding CCS entry is as follows:



04/21/2025     Order Issued
Order Signed: 04/16/2025
*Order of Court issued by Special Judge Walz.*

*See* Appellant's 1361 App. Vol. II at 78.[13]  On August 21—four months after granting the Town's supplemental petition—the trial court made the following CCS entry:

| 08/21/2025 | **Amended Final Judgment entered** (Judicial Officer: Walz, William R - SJ, IV)  Reason:  Other |
|---|---|
| | Comment () |
| | Monetary Award |
| |     Status: Active; Signed Date: 04/16/2025 |
| |     Awarded to: Town Of Clear Lake |
| |     Awarded against: Hoagland Family Limited |
| |     Attorney Fees: $60,076.49 |
| |     RJO: Book 2025, Page 0416 |
| |     Judgment: Book 2025, Page 0416 |
| | |
| |     04/16/2025 **Final Judgment entered** (Judicial Officer: Walz, William R - SJ, IV) |
| |       *Comment ()* |
| |       *Monetary Award* |
| |         *Status: Active; Signed Date: 04/16/2025* |
| |         *Awarded to: Town Of Clear Lake* |
| |         *Awarded against: Hoagland Family Limited* |
| |         *Judgment: $60,076.49* |
| |         *RJO: Book 2025, Page 0416* |
| |         *Judgment: Book 2025, Page 0416* |

*See* Appellant's 1361 Supp. App. Vol. II at 83–84.

[66]  The Town argues that the August 21 judgment entry is for the April 16 order granting the Town's supplemental petition.  We agree.  The August 21

---

[13] For the sake of viewing clarity, we have chosen to use screenshots of the CCS, all of which accurately reflect the copies of the CCS that Hoagland provided in its Appeal 1361 Appendix and Supplemental Appendix, except for the image quality thereof and page breaks.

judgment entry references an order dated April 16, 2025.  The only order in the CCS bearing that date is the order granting the Town's supplemental petition:



| 04/16/2025 | Motion to Correct Error Filed<br>File Stamp: 04/15/2025<br>Filed By:  Defendant  Hoagland Family Limited<br>*MTCE* |
| 04/16/2025 | Motion to Correct Error Filed<br>File Stamp: 04/15/2025<br>Filed By:  Defendant  Hoagland Family Limited<br>*MTCE* |
| 04/16/2025 | Motion to Correct Error Filed<br>File Stamp: 04/15/2025<br>Filed By:  Defendant  Hoagland Family Limited<br>*Motion to Correct Error* |
| 04/21/2025 | Administrative Event<br>*3 Motion to Correct Errors filed on 4/16/2025 forwarded to SJ Walz* |
| 04/21/2025 | Order Issued<br>Order Signed: 04/16/2025<br>*Order of Court issued by Special Judge Walz.* |
| 04/22/2025 | Automated ENotice Issued to Parties<br>*Order Issued ---- 4/21/2025 : Larry Lee Barnard;Bill David Eberhard;David Keith Hawk;W. Erik Weber;Jonathan Orlando Cress;Jeffrey Peter Smith;Neal R Blythe* |

*See* Appellant's 1361 App. Vol. II at 78.  The August 21 judgment entry and the April 16 order are for the same amount—$60,076.49.  Moreover, when taken together, the April 16 order entry and August 21 judgment entry follow the same pattern as the trial court's CCS order and judgment entries for the Financial Obligations Order:

| 03/17/2025 | Order Issued (Judicial Officer: Walz, William R - SJ, IV )<br>Order Signed: 03/16/2025<br>*ORDER OF COURT entered. Plaintiff, Town of Clear Lake, have and recover from Defendant,*<br>*Hoagland Family Limited Partnership, the sum of $512,623.521, together with the costs of this*<br>*action.* |
|---|---|
| 03/17/2025 | **Final Judgment entered** (Judicial Officer: Walz, William R - SJ, IV)<br>Comment ()<br>Monetary Award<br>    Status: Active; Signed Date: 03/16/2025<br>    Awarded to: Town Of Clear Lake<br>    Awarded against: Hoagland Family Limited<br>    Judgment: $512,623.52<br>    RJO: Book 2025, Page 0316<br>    Judgment: Book 2025, Page 0316 |

*See id.* at 77.  Hoagland does not argue that there are two judgments on the CCS in the amount of $512,623.52.

[67]   A plain reading of the CCS reveals that the August 21 judgment entry was merely a delayed judgment entry reflecting the details of the April 16 order. The trial court did not err by making the August 21 entry.

[68]   Turning now to the merits, we review the trial court's decision to award the Supplemental Fees for an abuse of discretion.  *Nardi v. King*, 253 N.E.3d 1098, 1103 (Ind. 2025) (citing *Brademas v. S. Bend Cmty. Sch. Corp.*, 783 N.E.2d 745, 750 (Ind. Ct. App. 2003)).  An abuse of discretion occurs if the trial court's decision "was against the logic and effect of the facts and circumstances before" it, *Nagireddy*, 252 N.E.3d at 422 (quoting *Wisner*, 984 N.E.2d at 1205), or if it misinterpreted the law, *id.* (citing *Members of Med. Licensing Bd. of Ind.*, 211 N.E.3d at 964).  To the extent Hoagland's challenges present questions of law, we review those issues de novo.  *Brooks*, 272 N.E.3d at 494 (citing *Horton*, 51 N.E.3d at 1157).

[69] Hoagland specifically claims that (a) a hearing should have been held on the Town's supplemental petition, (b) the Town waived its ability to recover the Supplemental Fees, and (c) the Supplemental Fees were not reasonable. We address each claim in turn.

### a. Hearing

[70] Hoagland argues that the trial court "deprived [Hoagland] of a meaningful opportunity to challenge both the accuracy and reasonableness of the fees

claimed."[14], [15]  Appellant's Am. 1361 Br. at 47.  Steuben County Local Rule

LR76-AR00-12, on which Hoagland bases its argument, states in relevant part

that when a party requests attorneys' fees, the party must submit a fee affidavit

---

[14] In making this argument, Hoagland states that "under Indiana law, the significance of the fee amount is a relevant consideration in determining whether procedural safeguards such as an evidentiary hearing are required." Appellant's Am. 1361 Br. at 47. To support this statement, Hoagland cites "*Fox v. Fox*, 521 N.E.2d 1240, 1244 (Ind. Ct. App. 1988)" and provides the following quotation therefrom: "Where the amount involved is significant, the record must demonstrate that the trial court had a sufficient factual basis to support the award." *Id.* This case appears to not exist. The reporter citation provided—"521 N.E.2d 1240"—leads to *People v. Pira*, 521 N.E.2d 1236 (Ill. App. Ct. 1988) (beginning on page 1236, ending on page 1243). The pincite provided—"521 N.E.2d [at] 1244"—leads to *Hauk v. Day*, 521 N.E.2d 1243 (Ill. App. Ct. 1988) (beginning on page 1243, ending on page 1245). This court has decided several cases with the name "*Fox v. Fox*," but none of those cases were decided in 1988. *See Fox v. Fox*, 113 N.E.3d 815, No. 18A-SC-1055 (Ind. Ct. App. Nov. 20, 2018) (mem.), *trans. denied*, 127 N.E.3d 223 (Ind. 2019); *Fox v. Fox*, 81 N.E.3d 701, No. 35A02-1607-DR-1675 (Ind. Ct. App. Mar. 7, 2017) (mem.); *Fox v. Fox*, 680 N.E.2d 18, No. 02A03-9610-CV-370 (Ind. Ct. App. Apr. 30, 1997) (mem.); *Fox v. Fox*, 466 N.E.2d 789 (Ind. Ct. App. 1984), *reh'g denied*, *implicit overruling recognized by In re Custody of G.J.*, 796 N.E.2d 756, 760 n.5 (Ind. Ct. App. 2003). A search of Indiana cases for the quotation Hoagland provided returned no relevant results.

Because the "*Fox v. Fox*" citation and associated quotation do not exist, it is likely they were created using generative artificial intelligence. "Citations to fictitious, AI-generated authority is a growing problem nationwide. Courts have sanctioned both attorneys and pro se litigants for including them in briefs." *Cingel v. Ferreri*, 269 N.E.3d 857, 861 (Ind. Ct. App. 2025) (quoting *Williams v. Kirch*, 268 N.E.3d 284, 288 (Ind. Ct. App. 2025), *trans. not sought*), *trans. not sought*. "We caution attorneys and pro se litigants alike against using AI to conduct legal research without independently verifying the citations generated. Judges must be able to rely on the authenticity of the authorities cited by the parties to make just decisions." *Id.* (quoting *Williams*, 268 N.E.3d at 288).

Although the Town in its Appeal 1361 briefing brought to Hoagland's attention the nonexistent citation and quotation, Appellee's 1361 Br. at 34, Hoagland failed to explain in its Appeal 1361 reply brief why it cited and quoted a nonexistent source, *see* Appellant's 1361 Reply Br. at 19–22. We remind Hoagland's counsel of his obligations under the Professional Conduct Rules, particularly his duty to not "knowingly . . . fail to correct a false statement of . . . law previously made to the tribunal by the lawyer," Prof. Cond. R. 3.3(a)(1).

[15] Hoagland also argues that the failure to hold a hearing on the supplemental petition "implicates [Hoagland]'s due process rights," Appellant's Am. 1361 Br. at 47, but Hoagland fails to analyze the applicable due process law. Hoagland has thus waived this claim for our review. *See* App. R. 46(A)(8)(a); *Pierce*, 29 N.E.3d at 1267.

Similarly, Hoagland contends that the attorneys' fees affidavits submitted with the Town's supplemental petition "were not submitted or admitted into evidence," Appellant's 1361 Reply Br. at 22, so the trial court "[could ]not consider them," *id.* (citing *Mann v. Russell's Trailer Repair, Inc.*, 787 N.E.2d 922, 929 (Ind. Ct. App. 2003)). Hoagland did not make this argument in its Appeal 1361 opening brief, so Hoagland has waived it for our review. *See Steele*, 168 N.E.3d at 1004 (citing *Bowman*, 51 N.E.3d at 1180–81).

and the trial court "shall admit the fee affidavit into evidence subject to cross-examination."

[71] Although based on a different rule, our Supreme Court's decision in *Care Group Heart Hospital, LLC v. Sawyer*, 93 N.E.3d 745 (Ind. 2018), is instructive. There, the trial court awarded the plaintiff more than $27,000 in expenses as a sanction for defendant's discovery abuses. *Id.* at 757. The trial court held a hearing on defendants' failure to comply with the order compelling discovery; afterwards, the trial court "issued an order indicating that '[a]ny expenses, fees, or costs shall be determined when submitted by Plaintiff,' as discussed during the hearing." *Id.* at 758 (alteration in original). The plaintiff filed a "detailed fee request, including over fifty pages of spreadsheets itemizing and describing the expenses he sought to recover"; the defendants filed a response in which they explained why many of the expenses "fell outside of the court's discovery order"; and the plaintiff filed a reply. *Id.* The trial court failed to hold a hearing before entering the award, which was error. *Id.* The plaintiff appealed the award because it was less than he requested, but in arguing that he was entitled to a hearing under Trial Rule 37(A)(4),[16] *id.* at 757–58, he could not point to any information "a hearing would have revealed that the record did not already supply," *id.* at 758. The Indiana Supreme Court concluded that the plaintiff

---

[16] " . . . Indiana Trial Rule 37(A) . . . requires the court, after granting a motion to compel discovery, to provide an opportunity for a hearing before awarding reasonable expenses incurred in obtaining the order." *Care Grp. Heart Hosp., LLC v. Sawyer*, 93 N.E.3d 745, 758 (Ind. 2018).

failed to show he was prejudiced by the lack of a hearing, so the trial court's error in not holding a hearing was harmless. *Id.*

[72] The facts here are similar to those in *Sawyer*. Like the trial court in *Sawyer*, the trial court here instructed the Town to file a post-hearing request for attorneys' fees. Like the plaintiff in *Sawyer*, the Town filed such a request and included detailed information therein. Like the defendants in *Sawyer*, Hoagland filed a written response to the request, explaining why the requested fees should not be awarded. And like the appealing party in *Sawyer*, Hoagland has not pointed to any information a hearing would have revealed that was not already in the record, so Hoagland has failed to demonstrate it was prejudiced by the lack of a hearing. Accordingly, any error caused by the trial court's failure to hold a hearing on the Town's supplemental petition was harmless.

### b. *Waiver of Recovering the Supplemental Fees*

[73] Hoagland asserts the Town waived any claim for the Supplemental Fees because they were not included in the November 18 attorneys' fees petition. The petition did not include the Town's attorneys' fees incurred after October 31, 2024.

[74] Hoagland contends that "[a] party generally waives the issues of supplemental attorney[s'] fees that it failed to present to the trial court when there is an

opportunity to do so."[17]  Appellant's Am. 1361 Br. at 45–46 (citing *Gonzalez v. Evans*, 15 N.E.3d 628, 640–41 (Ind. Ct. App. 2014)).  Hoagland's reliance on *Gonzalez v. Evans*, 15 N.E.3d 628, for this contention is misplaced.  In *Gonzalez*, Lisa Gonzalez subpoenaed R. Stanton Evans, her ex-husband's business partner, requesting production of various documents relating to certain business entities.  *Id.* at 631.  After negotiations for the production of the requested documents between the parties broke down, Gonzalez filed a motion to compel, which the trial court "conditionally grant[ed]."  *Id.* at 632.  At no point in the case did Gonzalez present evidence regarding the attorneys' fees she incurred in pursuing the subpoena and motion to compel, nor did she file an attorneys' fees affidavit in relation to the subpoena.  *Id.* at 633.  On appeal, Gonzalez argued the trial court erred by not holding a hearing to determine whether she was entitled to attorneys' fees regarding her motion to compel.  *Id.* at 639.  This court held that "Gonzalez has waived her claim to attorney[s'] fees" because (1) it was not clear if Gonzalez was automatically entitled to

---

[17] Hoagland also argues that at the Financial Obligations Hearing, the Town represented to the trial court that the Town "had all the documents and information necessary" to decide its request for fees, Appellant's 1361 Reply Br. at 19 (citing Appellant's 1361 App. Vol. VI at 134), and this representation "was a judicial admission," *id.*, that Hoagland "was entitled to rely on" and the trial court could "not ignore," *id.* at 20. Hoagland did not make this argument in its Appeal 1361 opening brief, so Hoagland has waived it for our review. *See Steele*, 168 N.E.3d at 1004 (citing *Bowman*, 51 N.E.3d at 1180–81). Nevertheless, Hoagland reraises this argument in Appeal 3170. Hoagland cannot challenge the Financial Obligations Order in Appeal 3170, so we will not consider any arguments Hoagland presents regarding that order in Appeal 3170. *See* App. R. 9(1) (requiring a Notice of Appeal to be filed within 30 days of a final judgment or of a ruling on a motion to correct error thereon); *In re Adoption of O.R.*, 16 N.E.3d 965, 971–72 (Ind. 2014) (holding an untimely appeal is forfeited absent extraordinarily compelling reasons). Nor does the alleged judicial admission appear to have any bearing on the decisions Hoagland challenges in Appeal 3170—the award of appellate attorneys' fees pursuant to *Hoagland V*, *see infra* ¶¶ 78–84, and the Nunc Pro Tunc Order, *see infra* ¶¶ 85–94.

attorneys' fees "given that the granting of her motion was condition[al]" and (2) she "had numerous time and opportunities to present some evidence or argument to the trial court regarding her attorney[s'] fees, but she never did so." *Id.* at 640. Gonzalez also "never expressly requested a hearing to address" her attorneys' fees, "she never submitted any attorney[s'] fees affidavit," and she "did not mention her purported entitlement to attorney[s'] fees during the hearing addressing Evans's attorney[s'] fees." *Id.*

[75] The *Gonzalez* court was faced with a litigant who was not clearly entitled to attorneys' fees and who repeatedly failed to assert her alleged right to such fees. 15 N.E.3d at 640–41. Here, by contrast, the trial court determined that "Indiana Code § 36-9-23-30(d) *mandates* the award of reasonable attorneys' fees and court costs to the Town enforcing sewer connection requirements." Appellant's 1361 App. Vol. II at 114, 116 (emphasis added). In recognition of the fact that the Town had incurred additional fees, the trial court gave the Town the opportunity to supplement its original request "for attorney[s'] fees in connection with this matter." *Id.* at 114. The Town did so, requesting the Supplemental Fees. On this record, we cannot say the Town waived its ability to request those fees by "fail[ing] to present to the trial court when there was an opportunity to present that issue." *Gonzalez*, 15 N.E.3d at 640 (quoting *In re R.P.*, 949 N.E.2d 395, 399 (Ind. Ct. App. 2011)).

### c. *Reasonableness of the Supplemental Fees*

[76] Hoagland maintains that $35,624.49 of the Supplemental Fees were not reasonable because they were all billed for "purported post-hearing services,"

namely, for preparing the Town's proposed order after the Financial Obligations Hearing. Appellant's Am. 1361 Br. at 46. According to Hoagland, the "Town is requesting post-hearing attorney[s'] fees of approximately $2,968.71 per page, or an astounding 6.34 hours per page" for the proposed order. *Id.* (citing Appellant's 1361 App. Vol. X at 247).

[77] Hoagland made this argument in its written objection to the Town's supplemental petition. The trial court rejected it, determining instead that the Supplemental Fees were "fair, reasonable and necessary." Appellant's 1361 App. Vol. II at 116. The record supports the trial court's conclusion. The post-Financial Obligations Hearing portion of the Supplemental Fees included not only work on the Town's proposed order, but also work on other related litigation, such as the Town's post-hearing motion to take judicial notice. On this record, we cannot say the trial court abused its discretion by awarding the Supplemental Fees.

### 4. The Trial Court Did Not Err by Awarding the Town Appellate Attorneys' Fees

[78] Hoagland asserts the trial court erred by awarding the Town $15,066.00 in appellate attorneys' fees. As a reminder, in *Hoagland V*, we remanded for the trial court to order Hoagland to pay the Town's appellate attorneys' fees based on Hoagland's "frivolous, bad faith, and meritless attempts to attack" the Second Contempt Order. 257 N.E.3d at 846. On September 5, 2025—after Hoagland had initiated Appeal 1361—the Town filed its motion requesting $15,066.00 in appellate attorneys' fees pursuant to *Hoagland V*. The Town

attached to its motion affidavits from its two attorneys who provided services in connection with *Hoagland V*. Both affidavits had itemized bills attached. Hoagland filed a written objection to the Town's motion and sought to have it dismissed;[18] the trial court overruled the Town's objection and denied its dismissal request.

[79] Without holding a hearing, the trial court ordered Hoagland to pay the Town $15,066.00 in appellate attorneys' fees, which it found the Town "incurred . . . for services rendered by the Town's attorneys which are fair, reasonable and necessary attorneys' fees" and "which are in addition to all previous attorney[s'] fee[s] awards." Appellant's 3170 App. Vol. II at 89. Hoagland now raises two challenges to this order: (a) the trial court lacked jurisdiction to award the appellate attorneys' fees, and (b) the trial court erred by not holding a hearing on the fee request. We address each challenge in turn.

### a. *The Trial Court's Jurisdiction*

[80] First, Hoagland argues that the trial court did not have jurisdiction to award the Town appellate attorneys' fees pursuant to our instructions in *Hoagland V*

---

[18] In support thereof, Hoagland represented that one of the issues in Appeal 1361 "is whether the Connection Order is void." Appellant's 3170 App. Vol. IX at 83. We have repeatedly and unequivocally rejected Hoagland's challenges to the Connection Order. Order, *Hoagland III*, No. 21A-PL-2566 (Ind. Ct. App. Jan. 10, 2022) (dismissing appeal); Order, *Hoagland III*, No. 21A-PL-2566 (Ind. Ct. App. Feb. 28, 2022) (denying reh'g pet.); *Hoagland IV*, 207 N.E.3d 1220, No. 22A-PL-631, slip op. at ¶¶ 17, 19; *Hoagland V*, 257 N.E.3d at 844–46. Perhaps most concerning is the fact Hoagland made this representation shortly after we determined that Hoagland's challenge to the Connection Order in *Hoagland V* "was made in bad faith" and "was a waste of judicial resources." *Hoagland V*, 257 N.E.3d at 846. We remind counsel of his duties under the Professional Conduct Rules, particularly his duty to refrain from asserting an issue in a proceeding "unless there is a basis in law and fact for doing so that is not frivolous," Prof. Cond. R. 3.1.

because Hoagland had already initiated Appeal 1361.[19]  According to Hoagland, the appellate attorneys' fees award "arises directly from the *Connection Order* and contempt proceedings under appellate review at that time" such that "[a]ny trial-level determination of additional fees . . . intruded on the subject matter pending before" this court.  Appellant's 3170 Br. at 30 (emphasis in original).

[81]  "Once an appeal is filed and the trial court clerk's record is complete, Appellate Rule 8 divests the trial court of jurisdiction to act upon the judgment appealed from until the appeal has been terminated."  *Norris*, 275 N.E.3d at 511 (internal quotation marks omitted) (quoting *Conroad Assocs., L.P. v. Castleton Corner Owners Ass'n, Inc.*, 205 N.E.3d 1001, 1005 (Ind. 2023).  "Despite Appellate Rule 8's jurisdictional fence, trial courts nevertheless retain authority 'over matters which are independent of and do not interfere with the subject matter of the appeal.'"  *Conroad Assocs.*, 205 N.E.3d at 1005 (quoting *Crider v. Crider*, 15 N.E.3d 1042, 1064–65 (Ind. Ct. App. 2014)).

[82]  None of the issues Hoagland raised in Appeal 1361 concern the Second Contempt Order or the appellate attorneys' fees we instructed the trial court to award in *Hoagland V*.  *See supra* ¶¶ 15–77.  That is, despite Hoagland initiating Appeal 1361 prior to the Town requesting its *Hoagland V*-related appellate

---

[19] In a related argument, Hoagland asserts the trial court reopened the evidence from the Financial Obligations proceedings in order to award the appellate attorneys' fees.  The appellate attorneys' fees are wholly separate from the Financial Obligations Order, and there is no indication in the record that the trial court reopened the evidence in awarding the Town its *Hoagland V*-related appellate attorneys' fees.

attorneys' fees, the trial court nevertheless retained authority to award those fees. The trial court had jurisdiction to enter the appellate attorneys' fees award.

### b. Hearing

[83]     Hoagland also claims that the trial court erred by not holding a hearing pursuant to Steuben County Local Rule LR76-AR00-12 on the Town's appellate attorneys' fees motion. Just as any error caused by the trial court's failure to hold a hearing on the Town's supplemental petition was harmless, *see supra* ¶¶ 70–72, any error caused by the trial court's failure to hold a hearing on the Town's appellate attorneys' fee request was harmless, *see Sawyer*, 93 N.E.3d at 757–58. Like the plaintiff in *Sawyer*, the Town included detailed information in support of its appellate attorneys' fees request. Like the defendants in *Sawyer*, Hoagland filed a written response to the request, explaining why the requested fees should not be awarded. And like the appealing party in *Sawyer*, Hoagland has not pointed to any information a hearing would have revealed that was not already in the record, so Hoagland has failed to demonstrate it was prejudiced by the lack of a hearing.

[84]     Notably, on appeal, Hoagland does not challenge the reasonableness of the appellate attorneys' fees award.[20] Based on the foregoing, we cannot say the

---

[20] In its Appeal 3170 reply brief, Hoagland asserts that it "does [not] concede the reasonableness of the rates charged by the Town and the necessity of the work performed." Appellant's 3170 Reply Br. at 7. Contrary to Hoagland's protestations, at no point in any of its Appeal 3170 briefing does Hoagland make any argument regarding the reasonableness of the appellate attorneys' fees.

trial court committed reversible error in awarding the Town appellate attorneys' fees pursuant to our instructions in *Hoagland V*.[21]

## 5. The Trial Court Did Not Err by Entering the Nunc Pro Tunc Order

[85] Finally, Hoagland contends the trial court erred by entering the Nunc Pro Tunc Order. On September 5, 2025, the Town asked the trial court to "correct" the First Contempt Order because the CCS did not reflect the $19,920.00 fine imposed thereby, Appellant's 3170 App. Vol. IX at 48. In the First Contempt Order, the trial court (1) found that Hoagland had "willfully failed and refused to comply with" the Connection Order and was "in contempt of Court"; (2) determined that "a reasonable fine for this contempt of court is $80.00 per day for each of [Hoagland]'s three (3) properties for 83 days which have elapsed since November 17, 2021, for a total of $19,920.00"; (3) ordered Hoagland to connect to the Sewer by 5:00 p.m. on March 10, 2022; and (4) provided that if Hoagland had "satisfactorily complied" with the First Contempt Order by 5:00 p.m. on March 10, 2022,[22] "the fines herein imposed . . . shall be subject to

---

[21] We decline Hoagland's request to award it appellate attorneys' fees under Appellate Rule 66(E) based on the Town's hearing waiver argument, *see* Appellee's 3170 Br. at 15–16, which Hoagland describes as "frivolous and [made] in bad faith," Appellant's 3170 Reply Br. at 10.

[22] In the original version of the First Contempt Order, the trial court stated that if Hoagland "has satisfactorily complied with this Order by March 20th, 2022, at 5:00 P.M., the fines herein imposed . . . shall be subject to remission." Appellant's 3170 App. Vol. II at 108. Seven days later, the trial court issued an amended version of the First Contempt Order, wherein it changed "March 20th" to "March 10th." *Compare id.*, *with* "Amended" Order of Court at 2, *Town of Clear Lake v. Hoagland Fam. Ltd. P'ship*, No. 76C01-1006-PL-425 (Ind. Steuben Cir. Ct. Feb. 25, 2022). *See* Appellee's 3170 Addend. at 4; *Hoagland IV*, 207 N.E.3d 1220, No. 22A-PL-631, slip op. at ¶ 11. Hoagland does not include the amended version of the First Contempt Order in its Appeal 3170 Appendix. Pursuant to Appellate Rule 27 and Evidence Rule 201, we have taken judicial notice of that amended version. *See Horton*, 51 N.E.3d at 1156.

remission." Appellant's 3170 App. Vol. II at 108. The First Contempt Order then stated in relevant part, "Ordered accordingly . . . ." *Id.* We affirmed the First Contempt Order on appeal. *Hoagland IV*, 207 N.E.3d 1220, No. 22A-PL-631.

[86] In its request for a nunc pro tunc order regarding the First Contempt Order, the Town stated that the $19,920.00 fine imposed thereby "does not appear on the Financial Information" on the case's CCS and the Steuben Circuit Court Clerk "will require a *nunc pro tunc* entry on the Court's Order of February 18, 2022, as amended by its Order of February 25, 2022, to reflect that additional amount was a judgment assessed against Hoagland in favor of the Town." Appellant's 3170 App. Vol. IX at 48. Hoagland filed a written objection to the Town's motion and sought to have it dismissed; the trial court overruled Hoagland's objection and denied its dismissal request.

[87] On October 7, 2025, the trial court entered the Nunc Pro Tunc Order, which replaced "Ordered accordingly . . . ," with the following language: "**JUDGMENT ORDERED** in favor of the Town of Clear Lake in the amount of $19,920.00, as of February 18, 2022, and **ORDERED** accordingly against Hoagland Family Limited Partnership." Appellant's 3170 App. Vol. II at 91 (emphases in original). *Compare id.*, *with id.* at 108.

[88] A nunc pro tunc entry is "an entry made *now* of something which was actually previously done, to have effect as of the former date." *Cotton v. State*, 658 N.E.2d 898, 900 (Ind. 1995) (emphasis in original) (quoting *Perkins v. Hayward*,

132 Ind. 95, 101, 31 N.E. 670, 672 (1892)).  Such an entry may be used to (1) "record an act or event not recorded in the court's order book" or (2) "change or supplement an entry already recorded in the order book."  *Id.* (citing *Stowers v. State*, 266 Ind. 403, 411, 363 N.E.2d 978, 983 (1977)).  The purpose of a nunc pro tunc entry is "to supply an omission in the record of action really had, but omitted through inadvertence or mistake."  *Id.* (quoting *Perkins*, 132 Ind. at 101, 31 N.E. at 672).  A nunc pro tunc entry "cannot be used as the medium whereby a court can change its ruling actually made, however erroneous or under whatever mistakes of law or fact such ruling may have been made." *Elliott v. Dyck O'Neal, Inc.*, 46 N.E.3d 448, 457 (Ind. Ct. App. 2015) (citing *Brimhall v. Brewster*, 835 N.E.2d 593, 597 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied*).  That is, a nunc pro tunc entry "is not license to make judicial changes in the actual law or ruling of the case."  *Id.* (quoting *Shipley v. KeyBank Nat'l Ass'n*, 821 N.E.2d 868, 881 (Ind. Ct. App. 2005)).

[89]     First, Hoagland asserts "[t]he Town's petition sought to 'correct' the February 18, 2022 Order by inserting new findings relating to appellate-level attorney fees and the timing of payment obligations—none of which were mentioned in the original 2022 Order or any contemporaneous record."  Appellant's 3170 Br. at 25 (citing Appellant's 3170 App. Vol. IX at 48; Appellant's 3170 App. Vol. II at 107).  In its September 5, 2025, motion, the Town did request both appellate attorneys' fees and a nunc pro tunc entry; however, those two requests were not connected, a fact which the Town clarified in response to Hoagland making this same argument at the trial level.

[90]     Second, Hoagland claims the Nunc Pro Tunc Order "makes no sense." Appellant's 3170 Br. at 26.

> [I]t is an order following a hearing on February 8, 2022, which, among other things, gives [Hoagland] until March 10, 2022 to connect and held that if [Hoagland] connects by March 10, 2022, then the fines "shall be subject to remission." Then, the Order states that judgment is ordered in favor of the Town in the amount of $19,920.00 *as of February 18, 2022!* The Order does not state what the amount is for or how it was calculated.

*Id.* (emphasis in original) (record citations omitted). These arguments are, at best, disingenuous. The Nunc Pro Tunc Order and the First Contempt Order clearly state that the $19,920.00 fine was imposed "for th[e] contempt of court"—that is, Hoagland's failure to comply with the Connection Order—and that the trial court arrived at that sum based on a fine of $80.00 per unconnected property per days since Hoagland was supposed to have connected to the Sewer ($80.00 x 3 properties x 83 days). Appellant's 3170 App. Vol. II at 91, 108.

[91]     Third, Hoagland contends the Town did not show that "the Trial Court found on February 18, 2022 that the Town was entitled to judgment in the amount of $19,920.00 but through omission or failure, did not enter the judgment." Appellant's 3170 Br. at 27. The First Contempt Order's use of "remission" demonstrates that the trial court intended for Hoagland to pay the Town the $19,920.00 fine. "Remission," particularly in the context of money, generally means "the relinquishment of a payment, obligation." *Remission,*

DICTIONARY.COM, https://www.dictionary.com/browse/remission (last visited May 11, 2026); *see also Remit*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("To send or put back to a previous condition or position . . . "; "To transmit (as money) . . . ."). By stating that the contempt fine would "be subject to remission" if Hoagland complied with the First Contempt Order, the trial court clearly conveyed that Hoagland was to pay the fine but that Hoagland might get this money back if it connected to the Sewer by March 10, 2022. Appellant's 3170 App. Vol. II at 91, 108. The Nunc Pro Tunc Order did not change what the First Contempt Order actually required. Instead, it clarified what the First Contempt Order already said—Hoagland owed the Town $19,920.00.

[92] Fourth, Hoagland claims the Nunc Pro Tunc Order was erroneous because "[h]ow could fines be awarded on February 18, 2022 when they were still speculative?" Appellant's 3170 Br. at 27. The trial court's formula for determining the fine amount and its use of "remission" indicate the fine was not speculative but definite and due. What was "speculative" as of February 18, 2022, was whether Hoagland would comply with the First Contempt Order such that it would be entitled to have those funds remitted to it.

[93] Fifth, Hoagland argues the Town should have requested an order under Trial Rules 59 or 60 instead of a nunc pro tunc entry. This argument is based on the faulty premise that the Town sought anything other than a supplementation of the First Contempt Order reflecting that Hoagland owed the Town $19,920.00.

In so clarifying the First Contempt Order, the trial court did not "exceed[ its] limited nunc pro tunc authority," Appellant's 3170 Br. at 28.

[94] Hoagland has owed the Town $19,920.00 since the trial court entered the First Contempt Order. The trial court did not err by entering the Nunc Pro Tunc Order clarifying that fact.

## Conclusion

[95] In sum, the trial court did not err by (1) denying Hoagland leave to amend its answer to add a counterclaim, (2) entering the Financial Obligations Order, (3) awarding the Town the Supplemental Fees, (4) awarding the Town appellate attorneys' fees per our instructions in *Hoagland V*, and (5) entering the Nunc Pro Tunc Order. We thus affirm the trial court on all issues raised.

[96] Finally, as this court recognized in *Hoagland II* and as demonstrated by this decision, this case "has been a conduit for a buildup of bile between the parties and has amassed a commodious volume of attorney[s'] fees," *Hoagland II*, 131 N.E.3d at 732. We remind the parties that although they may not be "overflowing with goodwill," *Hoagland I*, 75 N.E.3d at 1089, they have been ordered "to move on *in good faith* as they finally eliminate this waste of everyone's resources," *Hoagland II*, 131 N.E.3d at 732 (emphasis added). After clogging Indiana's courts for nearly 20 years, it is high time this case be flushed from the judiciary's pipes.

[97] Affirmed.

May, J., and Mathias, J., concur.

ATTORNEY FOR APPELLANT

Michael H. Michmerhuizen
Barrett McNagny LLP
Fort Wayne, Indiana


ATTORNEY FOR APPELLEE

Mark J. Crandley
Barnes & Thornburg LLP
Indianapolis, Indiana